**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| GRACE ESTABROOK,<br>ELLEN HOLMQUIST, and<br>MARGOT KACZOROWSKI,<br><br>               Plaintiffs,<br><br>     v.<br><br>THE IVY LEAGUE COUNCIL OF<br>PRESIDENTS, PRESIDENT AND<br>FELLOWS OF HARVARD COLLEGE,<br>TRUSTEES OF THE UNIVERSITY OF<br>PENNSYLVANIA,<br>and NATIONAL COLLEGIATE<br>ATHLETIC ASSOCIATION,<br><br>               Defendants. | Case No. 1:25-cv-10281-WGY |

**DEFENDANT PRESIDENT AND FELLOWS OF HARVARD COLLEGE'S**
**MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND................................................................................................. 2

LEGAL STANDARD............................................................................................................ 4

ARGUMENT ........................................................................................................................ 5

      I.      Plaintiffs Lack Standing To Assert Claims Against Harvard ................................ 5

              A.      Plaintiffs' Purported Injuries Stemming From Thomas's Eligibility and Participation in the Ivy League Championships Were Not Caused By Harvard. ................................................................................. 6

              B.      Plaintiffs Fail to Allege a Concrete Injury Sufficient to Support Standing to Bring Their Remaining Claims. ............................................ 10

      II.     Plaintiffs Fail To State A Title IX Claim On The Merits .................................... 13

              A.      The Eligibility Claims Should Be Dismissed. .......................................... 13

              B.      The Facilities Claim Should Be Dismissed Because Harvard's Approach Was Required, and at the Very Least Permitted, By Title IX. ............................................................................................................. 14

              C.      Plaintiffs Fail to State a Title IX Claim Based on the Reading of the Ivy League Statement and Media Activity Surrounding Thomas........................................................................................................ 15

              D.      In Any Event, Harvard Lacked Proper Notice That Any of Its Conduct Violated Title IX. ..................................................................... 18

CONCLUSION.................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................... 4

*Bostock v. Clayton Cty.*,
590 U.S. 644 (2020)............................................................................................. 14, 16

*Boston Alliance of Gay, Lesbian, Bisexual and Transgender Youth v. U.S. Dep't of
Health & Human Servs.*,
557 F. Supp. 3d 224 (D. Mass. 2021)....................................................................... 19

*Chestnut v. St. Louis Cty., Mo.*,
656 F.2d 343 (8th Cir. 1981) ..................................................................................... 12

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)................................................................................................... 11

*Crawford v. U.S. Dep't of Treasury*,
868 F.3d 438 (6th Cir. 2017) ..................................................................................... 11

*Cruzan v. Special Sch. Dist., #1*,
294 F.3d 981 (8th Cir. 2002) ..................................................................................... 15

*Cummings v. Premier Rehab Keller, PLLC*,
596 U.S. 212 (2022)................................................................................................... 18

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006)..................................................................................................... 6

*Dantzler, Inc. v. Empresas Berríos Inventory & Ops., Inc.*,
958 F.3d 38 (1st Cir. 2020).................................................................................... 6, 8

*Davis v. Monroe Cty. Bd. of Educ.*,
526 U.S. 629 (1999)....................................................................................... 13, 18, 19

*Deniz v. Municipality of Guaynabo*,
285 F.3d 142 (1st Cir. 2002)....................................................................................... 5

*DiCroce v. McNeil Nutritionals, LLC*,
82 F.4th 35 (1st Cir. 2023).......................................................................................... 5

*Disability Rights S.C. v. McMaster*,
24 F. 4th 893 (4th Cir. 2022) .................................................................................. 6, 8

*Doe v. Boyertown Area Sch. Dist.*,
897 F.3d 518 (3d Cir. 2018) ................................................................................ 15, 16

*Doe v. Harvard Univ.*,
410 F. Supp. 3d 332 (D. Mass. 2019)........................................................................ 17

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Doe v. Town of North Andover*,
2023 WL 3481494 (D. Mass. May 16, 2023) ........................................................................ 18

*Gebser v. Lago Vista Indep. Sch. Dist.*,
524 U.S. 274 (1998) ............................................................................................... 16, 19

*Grimm v. Gloucester Cnty. Sch. Bd.*,
972 F.3d 586 (4th Cir. 2020), *as amended* (Aug. 28, 2020) ............................................. 14, 15

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ..................................................................................................... 17

*Kappa Alpha Theta Fraternity, Inc. v. Harvard Univ.*,
397 F. Supp. 3d 97 (D. Mass. 2019) ................................................................................ 12

*Katz v. Pershing, LLC*,
672 F.3d 64 (1st Cir. 2012) ..................................................................................... 5, 6, 11

*Leader v. Harvard Univ. Bd. of Overseers*,
2017 WL 1064160 (D. Mass. Mar. 17, 2017) ..................................................................... 13

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ....................................................................................................... 5

*Mahon v. Ticor Title Ins. Co.*,
683 F.3d 59 (2d Cir. 2012) .............................................................................................. 6

*Mennone v. Gordon*,
889 F. Supp. 53 (D. Conn. 1995) .................................................................................... 13

*Muniz-Rivera v. United States*,
326 F.3d 8 (1st Cir. 2003) ............................................................................................... 4

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) ..................................................................................................... 17

*Parents for Privacy v. Barr*,
949 F.3d 1210 (9th Cir. 2020) ........................................................................................ 15

*Pegasystems, Inc. v. Appian Corp.*,
424 F. Supp. 3d 214 (D. Mass. 2019) ................................................................................ 4

*Pennhurst State Sch. & Hosp. v. Halderman*,
451 U.S. 1 (1981) ........................................................................................................ 18

*Premca Extra Income Fund LP v. iRobot Corp.*,
2025 WL 307247 (D. Mass. Jan. 27, 2025), *appeal docketed*, No. 25-1922 (1st Cir.
Feb. 25, 2025) ......................................................................................................... 5, 9

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ....................................................................................................... 5

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States v. Catala*,
  870 F.3d 6 (1st Cir. 2017) ....................................................................................... 5

*Universal Life Church Monastery Storehouse v. Nabors*,
  35 F.4th 1021 (6th Cir. 2022) ................................................................................. 9

*Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.*,
  454 U.S. 464 (1982) ............................................................................................... 13

*Victim Rights Law Ctr. v. Cardona*,
  552 F. Supp. 3d 104 (D. Mass. 2021) ................................................................... 7, 8

*Wadsworth v. Kross, Lieberman & Stone, Inc.*,
  12 F.4th 665 (7th Cir. 2021) .................................................................................. 11

**Statutes**

20 U.S.C. § 1681(a) ..................................................................................... 14, 15, 17

**Other Authorities**

EO 13988: Preventing and Combating Discrimination on the Basis of Gender Identity or
  Sexual Orientation, 86 Fed. Reg. 7023 (Jan. 20, 2021) ......................................... 20

U.S. DOJ & U.S. Dep't of Educ., Fact Sheet: Confronting Anti-LGBTQI+ Harassment in
  Schools at 1 (June 2021) ........................................................................................ 20

U.S. DOJ, Civil Rights Division, Memorandum re: Application of *Bostock v. Clayton
  County* to Title IX of the Education Amendments of 1972 (Mar. 26, 2021) ........... 20

Wright & Miller, *Federal Practice and Procedure* § 3531.5 .................................. 6, 7

**Regulations**

U.S. Dep't of Educ., Enforcement of Title IX of the Education Amendments of 1972
  With Respect to Discrimination Based on Sexual Orientation and Gender Identity in
  Light of *Bostock v. Clayton County*, 86 Fed. Reg. 32637 (June 22, 2021) ............. 20

## INTRODUCTION

Plaintiffs' Complaint boils down to one central allegation: that the decision to allow Lia Thomas, a transgender woman, to compete in the 2022 Ivy League Women's Swimming & Diving Championships (the "Ivy League Championships") constituted discrimination against Plaintiffs in violation of Title IX.  In making this claim, the Complaint alleges that the development of the National Collegiate Athletic Association's ("NCAA") transgender student-athlete participation policy, the Ivy League Council of Presidents' ("Ivy League") alleged lobbying in favor of eligibility for transgender student-athletes, and the University of Pennsylvania's ("UPenn") decision to roster a transgender woman to compete on their women's swimming team, all culminated in Thomas's participation in the Ivy League Championships in violation of Title IX.  But conspicuously absent from the Complaint is any allegation that the Presidents and Fellows of Harvard College ("Harvard") had any role in the circumstances that resulted in that alleged statutory violation.  In other words, Plaintiffs plead no facts showing that Harvard, as the host of the Ivy League Championships, *caused* the alleged injuries stemming from Thomas's eligibility and participation in that event.  That means Plaintiffs lack standing to sue Harvard for the principal claims in their Complaint.

The only allegations concerning actions that Harvard itself took involve the circumstances of the swim meet itself: (1) allowing competitors to use Harvard's locker rooms and restrooms in accordance with each individual's gender identity; (2) reading a non-discrimination statement at the event; and (3) speaking with the media.  But to the extent any of Plaintiffs' claims are premised on those actions, Plaintiffs lack standing to assert those, too, because they fail to allege cognizable injuries caused by those actions.  Finally, even if this Court finds it may reach the merits, it should still dismiss the claims against Harvard because Plaintiffs have not stated an actionable Title IX violation.

1

## FACTUAL BACKGROUND[1]

**The Parties**: Plaintiffs Grace Estabrook, Ellen Holmquist, and Margot Kaczorowski were members of the UPenn Women's Swimming and Diving Team during the 2021-2022 college swimming season.  Compl. for Damages, Declaratory, and Class Relief ("Compl.") ¶¶ 34, 41, 48 (Dkt. No. 1).  They purport to represent a class of all Ivy League women's swimmers who competed at or should have been able to compete at the 2022 Ivy League Championships.  *Id.* ¶¶ 388–90.  Defendants in this suit are UPenn, Harvard, the Ivy League, and the NCAA.  UPenn and Harvard are members of both the Ivy League and the NCAA.  *Id.* ¶¶ 52, 54.

**Eligibility Rules**: Plaintiffs allege that the NCAA exerts "controlling authority" over the athletic programs and activities of its member institutions.  *Id.* ¶ 71.  Relevant here, the NCAA establishes "eligibility rules governing intercollegiate athletics and student-athletes" on behalf of its member institutions and "run[s] the eligibility rules enforcement process" to which all member institutions are subject and to which they submit.  *Id.* ¶ 141(5), (6).  At the time relevant to this suit, the NCAA had in place the 2010 Transgender Participation Policy, which allowed transgender women athletes to compete in the women's division of their respective sports if they completed "one calendar year of testosterone suppression treatment."  *Id.* ¶¶ 78, 203.  "Compliance by NCAA member institutions with the 2010 Transgender Participation Policy was mandatory."  *Id.* ¶ 190; *see also id.* ¶ 137(z).  The Ivy League, whose Executive Director "is responsible for all eligibility decisions on behalf of the Ivy League," "has continuously applied the NCAA's Transgender Eligibility Policies."  *Id.* ¶¶ 128, 134.

**UPenn Women's Swim Team**: Plaintiffs' former teammate, Lia Thomas, is a transgender woman who also competed during the 2021-2022 season.  *Id.* ¶¶ 63, 269.  She is not a party to

---

[1] Harvard recounts Plaintiffs' allegations as pleaded for the limited purpose of this Motion.

this suit.  Thomas underwent testosterone suppression therapy from 2020 to 2021.  *Id.* ¶ 274.  UPenn rostered Thomas on its women's swimming team for the 2021 to 2022 swimming season.  *Id.* ¶¶ 3, 63.  It also selected her to the women's swimming and diving team roster for the Ivy League Championships.  *Id.* ¶ 64.  Estabrook and Kaczorowski were also chosen to be part of that roster.  *Id.* ¶¶ 358, 365–66.  On February 4, 2022, UPenn hosted a swim-off to determine who would take UPenn's final spot at the Ivy League Championships.  *Id.* ¶¶ 353–54.  Holmquist participated in the swim-off but "missed making the [team] by one spot."  *Id.* ¶¶ 354–55.

*Ivy League Championships*: The Ivy League Championships took place from February 16 to 19, 2022, at Harvard's Blodgett Pool.  *Id.* ¶¶ 58, 367.  During the meet, Harvard converted its men's locker room into a second women's locker room and assigned four schools to each room.  *Id.* ¶ 383.  Thomas used the locker room assigned to UPenn.  *Id.* ¶ 384.  Estabrook also used the locker room assigned to UPenn because her events did not overlap with Thomas's, while Kaczorowski chose not to use the UPenn locker room because her events did overlap with Thomas's.  *Id.* ¶¶ 385–86.  Holmquist did not attend the meet.  *See id.* ¶¶ 354–55.  The Ivy League had promulgated a standard anti-discrimination statement, and that statement was read "before all sessions of the 2022 Ivy League Championships," as it was at "all other Ivy League competitions that year."  *Id.* ¶¶ 135–36, 360.

Thomas competed with significant success at the Ivy League Championships.  *Id.* at ¶¶ 367–69.  Plaintiffs allege that in the lead-up to the meet, the Ivy League's Executive Director had "worked closely with representatives of Harvard . . . to . . . enhance media focus upon Thomas' anticipated record-breaking performances."  *Id.* ¶ 345.  And during the meet, "[m]edia statements by the Ivy League, Harvard, and UPenn gave substantial recognition to Thomas to the exclusion and detriment of female athletes."  *Id.* ¶ 361.

*Claims*: Plaintiffs' Complaint contains two counts, each alleging violations of Title IX by the NCAA, the Ivy League, UPenn, and Harvard. Count I, brought on behalf of Estabrook, Kaczorowski, and Holmquist, alleges that Defendants' actions deprived them of a "meaningful and equal opportunity to compete in the Ivy League Championships and constitutes sex discrimination against women within the meaning of Title IX." *Id.* ¶ 422. Count II is brought on behalf of Holmquist and alleges that Defendants' actions deprived Holmquist of a "meaningful and equal opportunity to compete in the Ivy League Championships." *Id.* ¶ 437. Plaintiffs seek, among other things: declaratory relief, including a declaration that defendants violated Title IX and that Thomas was ineligible to compete on the UPenn women's swimming team; injunctive relief vacating Thomas's records in NCAA, Ivy League, and member institutions' records; and "all such injunctive relief and damages as are available under their various claims." *Id.* at 86.

## LEGAL STANDARD

A court must dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) "when the facts alleged in the complaint, taken as true, do not justify the exercise of subject matter jurisdiction." *Muniz-Rivera v. United States*, 326 F.3d 8, 11 (1st Cir. 2003). To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In analyzing whether a complaint meets that standard, a court must "set[] aside conclusory statements and examine[] only the pleader's factual allegations." *Pegasystems, Inc. v. Appian Corp.*, 424 F. Supp. 3d 214, 221 (D. Mass. 2019). While it must draw "all reasonable inferences" in favor of the Plaintiffs, it may not "draw unreasonable inferences or credit bald assertions [or] empty conclusions," and it must "disregard[] allegations that merely offer legal conclusions couched as fact." *Premca Extra Income Fund LP v. iRobot Corp.*, 2025 WL

307247, at *15 (D. Mass. Jan. 27, 2025), *appeal docketed*, No. 25-1922 (1st Cir. Feb. 25, 2025) (cleaned up). "When a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter" because "if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 149–50 (1st Cir. 2002).

## ARGUMENT[2]

## I.    PLAINTIFFS LACK STANDING TO ASSERT CLAIMS AGAINST HARVARD

As a threshold matter, all claims against Harvard should be dismissed for a lack of standing. "[A] federal court must resolve any doubts about . . . standing before proceeding to adjudicate the merits of a given case." *United States v. Catala*, 870 F.3d 6, 9 (1st Cir. 2017). At the pleading stage, Plaintiffs "bear[] the burden of establishing sufficient factual matter to plausibly demonstrate [their] standing." *DiCroce v. McNeil Nutritionals, LLC*, 82 F.4th 35, 39 (1st Cir. 2023). To establish standing, a plaintiff must show that: (1) she suffered an "injury in fact"; (2) there is a "causal connection between the injury and the conduct complained of"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). The injury-in-fact requirement obliges a plaintiff to allege an injury that is both "concrete *and* particularized." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016). And "[b]ecause the opposing party must be the source of the harm, causation is absent if the injury stems from the independent action of a third party." *Katz v. Pershing, LLC*, 672 F.3d 64, 71–72 (1st Cir. 2012). Importantly, "standing is not dispensed in gross," but rather is a claim-specific inquiry, so Plaintiffs must satisfy these three requirements for each of their claims. *DaimlerChrysler Corp. v. Cuno*, 547

---

[2] Harvard incorporates by reference all legal arguments in Penn's Memorandum In Support of its Motion to Dismiss.

U.S. 332, 353 (2006).

### A.    Plaintiffs' Purported Injuries Stemming From Thomas's Eligibility and Participation in the Ivy League Championships Were Not Caused By Harvard.

The claims that form the central focus of the Complaint arise out of Thomas's eligibility for, and participation in, the Ivy League Championships (the "eligibility claims").  *See* Compl. ¶¶ 422, 437.  Harvard was merely the host of this event which, according to the Complaint, was run in accordance with NCAA and Ivy League policies.  Thus, Harvard had no say in Thomas's eligibility or participation and therefore could not have caused the alleged injuries underlying the eligibility claims.

Article III's causation or traceability prong requires a plaintiff to show that "the opposing party" was "the source of the harm."  *Katz*, 672 F.3d at 71–72.  The causation requirement will therefore often prompt "the question whether the plaintiff has sued the proper defendant."  Wright & Miller, *Federal Practice and Procedure* § 3531.5.  To establish their standing to sue, Plaintiffs must show for *each* of their claims not just that someone caused the injury, but that the particular defendants against whom those claims are asserted caused that injury.  *See, e.g.*, *Disability Rights S.C. v. McMaster*, 24 F. 4th 893, 900 (4th Cir. 2022) ("[T]he standing inquiry must be evaluated separately as to each defendant."); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62–63 (2d Cir. 2012) (similar).  "If [a] defendant has not caused the injury, a remedy directed against him will not relieve the injury.  There is little justification, moreover, for imposing the burdens of litigation on a defendant who has not caused the injury."  Wright & Miller, *supra*, § 3531.5.  For this reason, courts must be cautious not to "find[] that a plaintiff's injury is fairly traceable to a defendant's conduct where the plaintiff alleges a causal chain dependent on actions of third parties."  *Dantzler, Inc. v. Empresas Berríos Inventory & Ops., Inc.*, 958 F.3d 38, 48 (1st Cir. 2020); *see also Victim Rights Law Ctr. v. Cardona*, 552 F. Supp. 3d 104, 123 (D. Mass.

2021) (Young, J.) ("Although an indirect causal relationship is not necessarily fatal, an injury is less likely to satisfy [the traceability] requirement where the causal chain between the defendant's action and the alleged harm depends on the actions of a third party.").

The alleged causal chain underlying the eligibility claims is entirely dependent on the actions of third parties. Plaintiffs' Complaint is devoid of any allegation that Harvard played a role in either Thomas's selection to the UPenn team or her eligibility for the meet. Instead, Plaintiffs openly attribute Thomas's presence at the meet to a set of policies and decisions made by the other three defendants in this case. More specifically, Plaintiffs blame: (1) the NCAA's 2010 Transgender Participation Policy, which they allege was "discriminat[ory] on its face against women" and in violation of Title IX, and which allowed Thomas to compete, Compl. ¶¶ 81, 90, 103; *see also id.* ¶¶ 218–64 (explaining why the 2010 policy had discriminatory impact on women); *id.* ¶ 217 (noting that the 2010 policy governed at the Ivy League Championships); *id.* ¶ 423 (describing the alleged discrimination); (2) the Ivy League's "encourage[ment] [of] the participation of transgender student athletes in collegiate athletics," *id.* ¶ 134; *see also id.* ¶¶ 312–44 (detailing the Ivy League's "pressure campaign" to ensure the NCAA would not change the 2010 policy in advance of the Ivy League Championships); and (3) UPenn's decision to roster Thomas on the women's swimming team and on the Ivy League Championships team*, id.* ¶¶ 265–311.

Notably absent from the complaint is a factual allegation that *Harvard* played a role in any of those policies or decisions. Instead, the Complaint's allegations confirm the opposite. With respect to the 2010 Transgender Participation Policy, the Complaint alleges, among other things, that: the policy was created by and "purposefully implemented and enforced by the NCAA," *id.* ¶¶ 74–75; "[c]ompliance by NCAA member institutions with the 2010 Transgender

Participation Policy was mandatory," *id.* ¶ 190; and the NCAA decided, in February 2022, that it would not adjust its eligibility rules for the Ivy League Championships despite new USA Swimming guidance, *id.* ¶¶ 338–41.  In other words, the NCAA conceived of the policy, determined the scope of its application, and then implemented and enforced it.  Plaintiffs openly admit, meanwhile, that Harvard had no control over the NCAA's eligibility decisions.  *See, e.g.*, *id.* ¶¶ 71, 141, 188.  Likewise, in the context of the Ivy League, Plaintiffs allege that the Ivy League actively encouraged and in fact pressured the NCAA to maintain that policy.  *Id.* ¶¶ 333–34.  Accepting, as this Court must, that each of those allegations is true, any injury caused by the 2010 Transgender Participation Policy is not traceable to Harvard, but rather to the actions of third parties.  *Dantzler*, 958 F.3d at 48; *Victim Rights Law Ctr.*, 552 F. Supp. 3d at 123; *cf. Disability Rights S.C.*, 24 F.4th at 902 ("When a defendant has no role in enforcing the law at issue, it follows that the plaintiff's injury allegedly caused by that law is not traceable to the defendant.").

Plaintiffs next complain about the "authorization of Thomas to compete" on the UPenn team and at the Ivy League Championships.  Compl. ¶ 423.  Here, too, the Complaint serves only to highlight Harvard's absence in the causal chain.  According to Plaintiffs, "UPenn rostered . . . Lia Thomas[] on its women's swimming team."  *Id.* ¶ 63.  UPenn then "selected Thomas to the women's swimming and diving team roster that it took to the Ivy League Championships."  *Id.* ¶ 64.  And UPenn, the Ivy League, and the NCAA—but not Harvard—"close[ly] coordinat[ed] . . . regarding Thomas' eligibility[.]"  *Id.* ¶ 313.  Once again, accepting each of these allegations as true, there is no way to trace Thomas's participation at the Ivy League Championships to Harvard's actions.

The only conceivable basis on which Plaintiffs could attribute Thomas's eligibility for the

Ivy League Championships—and the alleged resulting injuries—to Harvard, then, is Harvard's role as host and its "own[ership] and control[]" of the Blodgett Pool.  *Id.* ¶¶ 58, 438.  To prevail on such a theory, though, Plaintiffs would have to show that because Harvard hosted the meet and had control over the pool, it also had control over who participated in the meet.  Plaintiffs have not made that showing.  The Complaint, as just discussed, attributes all eligibility and participation decisions to non-Harvard entities, and does so in no uncertain terms.  *See supra* at 7–9.  In sum, then, "[t]o the extent plaintiffs have been injured" by Thomas's participation in the Ivy League Championships, "they have not explained how [*Harvard*] caused the injury." *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1032 (6th Cir. 2022). Thus, "[n]o Article III case or controversy exists . . . against" Harvard.  *Id.*[3]

At a minimum, this Court should dismiss Harvard as a defendant under Count II, which is brought solely on behalf of Holmquist.[4]  Holmquist claims that she should have been able to participate in the Ivy League Championships but could not do so because Thomas took her spot on the UPenn team.  *See* Compl. ¶¶ 356–57.  She alleges that her resulting "loss of participation" is a cognizable Title IX injury.  *Id.* ¶ 439.  Harvard, as the mere host of the championship meet that Holmquist *did not attend*, could not have caused that injury.  *Id.*  Instead, Holmquist's "loss of participation" was a result of the internal swim-off that UPenn conducted to fill the last spot on its women's swim team.  *Id.* ¶¶ 354–56.  The swim-off took place on February 4, 2022, weeks

---

[3] Plaintiffs attempt to connect Harvard to Thomas's eligibility and participation by theorizing that Harvard "conspir[ed] and collaborat[ed]" with other Defendants to cause the asserted injuries.  Compl. ¶¶ 384, 387.  But those statements, which merely offer "legal conclusions couched as fact," do not suffice.  *Premca*, 2025 WL 307247, at *15.  Plaintiffs provide no factual allegations describing what Harvard allegedly did that constituted "conspiring and collaborating . . . to allow Thomas to compete[.]"  Compl. ¶ 387.

[4] The Complaint suggests that Count I is also brought on behalf of Holmquist.  Compl. ¶ 408.  If that is true, it is not clear what distinction there is between Counts I and II.  In any event, the arguments herein apply to any claim brought on Holmquist's behalf.

before Harvard hosted the Championships.  *Id.* ¶ 354.

**B.    Plaintiffs Fail to Allege a Concrete Injury Sufficient to Support Standing to Bring Their Remaining Claims.**

After disposing of the numerous allegations that have nothing to do with Harvard, Harvard is able to discern the following allegations that actually relate to it: that Harvard (1) permitted Thomas to use women's "toilets, showers, and/or locker rooms" at the meet (the "facilities claim"), *see* Compl. ¶¶ 383–84; (2) coordinated with the Ivy League to ensure Harvard officials would read an anti-discrimination statement to participating athletes during the meet (the "statement claim"), *see id.* ¶¶ 135, 346; and (3) coordinated with the Ivy League to "enhance media focus" on Thomas at the meet and made statements recognizing her achievements (the "media claim"), *id.* ¶¶ 345, 361.  Even accepting Plaintiffs' allegations as true, Harvard's actions did not injure Plaintiffs in any way and Plaintiffs fail to allege otherwise.

***The Facilities Claim***: Plaintiffs Estabrook and Kaczorowski challenge Harvard's failure to provide separate locker-room facilities for Thomas as discriminatory under Title IX.[5]  But neither suffered a concrete injury sufficient to confer standing.  Kaczorowski, by her own admission, never used the locker room when Thomas was there.  *Id.* ¶ 386.  She alleges that because her events "overlap[ped] with Thomas and she could not avoid changing at the same time that Thomas did[,] [she] . . . chose not to use the locker room assigned to UPenn to protect her privacy and avoid the disruption and distraction of sharing a locker room" with Thomas.  *Id.* But she does not allege that her choice to use a different locker room harmed her in any way. The lack of injury leaves her without standing to bring a Title IX claim on this issue.

_____

[5] Plaintiffs also allege that Harvard authorized Thomas to use women's toilets and showers at Blodgett Pool, but provide no information regarding their usage or any alleged injuries arising from the policies pertaining to toilets and showers.  Therefore, this brief addresses as much as it can with the limited allegations provided by Plaintiffs.

Estabrook's allegations suffer from the same fundamental problem. She, like Kaczorowski, does not allege that she used the locker room in Thomas's presence, but for the different reason that her events "generally did not overlap with Thomas's." *Id.* ¶ 385. Estabrook cannot claim to have been injured by Thomas's presence in the locker rooms when there is no allegation that they crossed paths there.

Estabrook contends that it was nevertheless "a disruption to her peace and preparation for her swims knowing that Thomas could walk in at any moment while she was changing." *Id.* That purported injury suffers from three problems. First, general feelings of discomfort are not concrete, cognizable injuries sufficient to confer standing. *See, e.g., Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 459–60 (6th Cir. 2017) (holding that "discomfort" and "resentment" are not cognizable injuries); *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) (holding that "anxiety and embarrassment," "stress," "annoy[ance]," "infuriation or disgust," and "a sense of indignation" are not concrete injuries). Second, the psychological "disruption" alleged here is based on the anticipation of some future occurrence of harm. But it is well-established that a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). The Complaint alleges no facts suggesting a "reasonably impending threat" that Thomas would walk into the locker room for events in which she was not participating. *Katz*, 672 F.3d at 79. That is fatal to Estabrook's standing. *See id.* (plaintiff lacked standing where her theory of injury lay in her response to anticipated, but not reasonably impending, threat of future harm). Finally, even setting those two problems aside, Kaczorowski's allegations suggest that Harvard provided two locker rooms that were apparently available to all athletes. *See* Compl. ¶ 386. Estabrook thus could have easily

11

avoided any "disruption to her peace" by following her teammate's lead and declining to use the Penn locker room. *See Chestnut v. St. Louis Cty., Mo.*, 656 F.2d 343, 347 (8th Cir. 1981) (no standing where plaintiff had option to avoid injury). Having failed to allege any injuries to support their claims on this issue, Plaintiffs have no standing to proceed.

***The Statement and Media Claims***: Plaintiffs similarly have no standing to challenge the reading of the anti-discrimination statement and Harvard's interactions with the media. With respect to the former, Plaintiffs do not even purport to have been injured by the reading of the statement. *See* Compl. ¶¶ 135, 346 (alleging only that the statement was read). That alone renders this claim deficient and subject to dismissal.[6] As for the latter, Plaintiffs suggest that the media gave "substantial recognition to Thomas to the exclusion and detriment of female athletes" and that their accomplishments were "largely ignor[ed]." *Id.* ¶¶ 361–62. They do not explain why media recognition of Thomas was "detrimental" to them, however. Nor, for that matter, do they allege that they were "denied access to any opportunities or privileges on Harvard's campus by virtue of" the challenged statements. *See Kappa Alpha Theta Fraternity, Inc. v. Harvard Univ.*, 397 F. Supp. 3d 97, 106 (D. Mass. 2019) (plaintiff who was not denied access to campus opportunities lacked standing under Title IX). Indeed, it is common for institutions to discuss particular athletes with the media to the exclusion of others, and there is no basis for a claim that it is somehow a Title IX violation to do so.

At bottom, then, Plaintiffs' injury with respect to both the statement and media claims must come down to suffering some "psychological consequence presumably produced by

---

[6] The statement claim also suffers from a causation problem. Plaintiffs allege that the Ivy League promulgated and required the reading of this statement, Compl. ¶ 346, and that the statement was "read before all swim meets involving Ivy League Schools." *Id.* ¶ 135. In other words, regardless of who hosted the Ivy League Championships, this statement allegedly would have been read. Harvard is thus not responsible for any injury stemming from the statement.

observation of conduct with which [they] disagree[]," be it being present for the reading of the anti-discrimination statement or watching the media give Thomas significant attention. *Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982). Even if such injury had been pled (and it was not), "[t]hat is not an injury sufficient to confer standing . . . ." *Id.*; *see also supra* at 11. The Court should dismiss Plaintiffs' Title IX claims for lack of jurisdiction.

## II.    PLAINTIFFS FAIL TO STATE A TITLE IX CLAIM ON THE MERITS

If, despite the deficiencies discussed above, this Court reaches the merits of the suit, it should dismiss all claims against Harvard for failure to state a Title IX violation.

### A.    The Eligibility Claims Should Be Dismissed.

The eligibility claims against Harvard should be dismissed for similar reasons to those stated in Part I.A above. Just as Article III does not permit Plaintiffs to bring Harvard into federal court for injuries it did not cause, Title IX does not allow them to hold Harvard liable for discrimination over which it had no control. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 640 (1999) ("[A] recipient of federal funds may be liable in damages under Title IX only for its own misconduct."); *Mennone v. Gordon*, 889 F. Supp. 53, 56 (D. Conn. 1995) ("Logically, the language of Title IX demands that a defendant must exercise some level of control over the program or activity that the discrimination occurs under."); *see also, e.g.*, *Davis*, 526 U.S. at 644, 646 (deliberate indifference theory also requires that "funding recipient ha[ve] some control over the alleged harassment" and "exercise[] significant control over the harasser"); *Leader v. Harvard Univ. Bd. of Overseers*, 2017 WL 1064160, at *4 (D. Mass. Mar. 17, 2017) (noting that "the deliberate indifference standard has been purposely set high" to eliminate risk of recipients being held liable for third-party actions).

13

**B.     The Facilities Claim Should Be Dismissed Because Harvard's Approach Was Required, and at the Very Least Permitted, By Title IX.**

Plaintiffs' only developed claim against Harvard is its challenge to the lack of separate bathroom and locker-room facilities for Thomas.  But not only do Plaintiffs have no standing to assert such a claim, they also cannot proceed for the independent reason that Harvard's failure to provide separate facilities cannot, as a matter of law, violate Title IX.

Plaintiffs have Title IX's application to bathroom and locker-room facilities exactly backwards: Title IX requires recipients of federal funds to *permit* transgender individuals to use bathrooms and locker rooms consistent with their gender identity, not the other way around. This rule follows from the statutory text and Supreme Court precedent.  Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  In *Bostock v. Clayton Cty.*, 590 U.S. 644 (2020), the Supreme Court held that it was "impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex." *Id.* at 660.  As such, to comply with Title IX, Harvard could not treat Thomas any differently because she was transgender, including with respect to whether she could use facilities consistent with her gender identity.  Yet Plaintiffs maintain that Title IX obligated Harvard to do just that.  That is contrary to both the text of Title IX and *Bostock*.

Unsurprisingly, then, no court of appeals to have directly considered this issue has adopted Plaintiffs' reading of Title IX.  Nor have most courts found this issue close.  In *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020), *as amended* (Aug. 28, 2020), for example, the Fourth Circuit said that after *Bostock*, it had "little difficulty holding that a bathroom policy precluding Grimm [a transgender male] from using the boys restrooms

discriminated against him 'on the basis of sex.'" *Id.* at 616.  The Third Circuit has similarly found that "barring transgender students from restrooms that align with their gender identity would itself pose a potential Title IX violation." *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 533 (3d Cir. 2018).  Plaintiffs urge this Court to break with prevailing appellate authority and hold Harvard liable for refusing to discriminate.  This Court should reject that plea.

At the very least, Title IX does not *prohibit* the decision to let Thomas use the women's locker room and bathroom facilities.  The statute, by its plain terms, prohibits exclusion from educational programs "on the basis of sex."  20 U.S.C. § 1681(a).  "The touchstone of" a Title IX claim is thus "disparate treatment *based on sex*."  *Boyertown Area Sch. Dist.*, 897 F.3d at 534–35; *see also Parents for Privacy v. Barr*, 949 F.3d 1210, 1228 (9th Cir. 2020).  Plaintiffs have failed to allege that Harvard's provision of locker-room and bathroom facilities in any way discriminated based on sex.  Harvard treated all individuals—male and female—the same by allowing every athlete to use the locker-room or bathroom facility consistent with their gender identity.  As the Third Circuit has held, that sex-neutral approach does not violate Title IX.  *See Boyertown Area Sch. Dist.*, 897 F.3d at 535 ("The School District's policy allows all students to use bathrooms and locker rooms that align with their gender identity.  It does not discriminate based on sex, and therefore does not offend Title IX.").[7]

### C.    Plaintiffs Fail to State a Title IX Claim Based on the Reading of the Ivy League Statement and Media Activity Surrounding Thomas.

*Statement Claim*: Plaintiffs briefly suggest that Harvard officials' reading of the Ivy

---

[7] Plaintiffs suggest in passing that by permitting Thomas to use the women's locker room, Harvard subjected them to harassment in violation of Title IX.  *See* Compl. ¶ 387.  Even assuming their threadbare allegation were enough to invoke a harassment theory, the claim would fail because Thomas's mere presence, without more, does not satisfy the requirements of a Title IX harassment claim.  *See Parents for Privacy*, 949 F.3d at 1228–29; *cf. Cruzan v. Special Sch. Dist., #1*, 294 F.3d 981, 984 (8th Cir. 2002) (per curiam).

League's anti-discrimination statement violated Title IX. That is wrong. As just explained, the touchstone of Title IX is discrimination *based on sex*. *Boyertown Area Sch. Dist.*, 897 F.3d at 534–35. Plaintiffs make no attempt to explain how the challenged statement amounted to sex-based discrimination. The statement asked athletes to: "practic[e] good sportsmanship," refrain from using "racist, homophobic or transphobic language," and "refrain from any and all discriminatory acts of verbal or physical abuse." Compl. ¶ 135. Indeed, far from *violating* Title IX, the statement's express anti-discrimination message is entirely consistent with Title IX's goal of "protecting individuals from discriminat[ion]." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998). Plaintiffs cannot seriously be suggesting that Harvard violated an anti-discrimination statute by asking students to refrain from discriminating.

That Plaintiffs take issue with the discouragement of transphobic language is also confounding. Compl. ¶ 360. After *Bostock*, there can be no question that the use of transphobic language could, in certain circumstances, contribute to the existence of a hostile environment based on sex in violation of Title IX. *Bostock*, 590 U.S. at 669 ("[D]iscrimination based on homosexuality or transgender status necessarily entails discrimination based on sex."). Accordingly, that aspect of the statement is fully consistent with Title IX. And even if it were not, Title IX has never been held to preclude a funding recipient from encouraging others to refrain from transphobic conduct. Finally, this claim should be dismissed for the independent reason that Plaintiffs do not allege that the statement in any way caused them any harm, much less to "be excluded from participation in, be denied the benefits of, or be subjected to discrimination" in a Harvard program or activity. 20 U.S.C. § 1681(a).

***Media Claim***: Plaintiffs' allegations with respect to the media are even more threadbare. Once again, Plaintiffs do not allege a single fact on this subject, including what Harvard

16

allegedly said to whom, or when any alleged interaction with the media occurred.  Nor do the Complaint's allegations purport to explain how Harvard's statements to the media discriminated *on the basis of sex*, much less deprived them of access to any educational opportunities.  *See Doe v. Harvard Univ.*, 410 F. Supp. 3d 332, 335 (D. Mass. 2019) (dismissing Title IX claim that was "devoid of any facts supporting a claim that Harvard [acted] *because of*" plaintiff's gender).

More problematically, Plaintiffs' attempt to challenge Harvard's media statements raises serious First Amendment concerns.  A statute may run afoul of the First Amendment even if it burdens speech only indirectly, including by requiring courts to apply, in a "civil lawsuit between private parties," a "rule of law which . . . impose[s] invalid restrictions on . . . constitutional freedoms of speech and press."  *New York Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964).  This Court should therefore avoid construing Title IX to impose liability on an entity based on protected speech.  *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) ("When a serious doubt is raised about the constitutionality of an Act of Congress, it is a cardinal principle that [courts] will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." (internal quotations omitted)).  Though Plaintiffs never specify the particular statements to which they object, Compl. ¶ 361, they make no suggestion that those statements would fall into any sort of First Amendment exception.  Holding Harvard liable for what it said to the media would thus run headlong into the First Amendment.  This Court should interpret Title IX to avoid that result.

***Damages***:  Even if this Court concludes that Harvard's conduct violated Title IX, it should still dismiss the claims because Plaintiffs cannot recover for them as a matter of law.  The only conceivable damages they could allege for these claims are damages for "mental and emotional distress, suffering, and anxiety."  Compl. at 86.  But Supreme Court precedent

"precludes damages for emotional distress under Title IX." *Doe v. Town of North Andover*, 2023 WL 3481494, at *11 (D. Mass. May 16, 2023) (citing *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212 (2022)).  As such, Plaintiffs have not shown they are entitled to relief under Title IX.

### D.    In Any Event, Harvard Lacked Proper Notice That Any of Its Conduct Violated Title IX.

At the very least, it was insufficiently clear at the time of the Ivy League Championships that Title IX prohibited any of the challenged conduct.  This lack of clarity is fatal to Plaintiffs' damages claims.  Because the Supreme Court has "repeatedly treated Title IX as legislation enacted pursuant to Congress' authority under the Spending Clause, . . . private damages actions are available only where recipients of federal funding had *adequate notice* that they could be liable for the conduct at issue." *Davis*, 526 U.S. at 639–40 (emphasis added).  That follows from the principle that legislation pursuant to the spending power is "much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981).  "In interpreting language in spending legislation, we thus 'insis[t] that Congress speak with a clear voice,' recognizing that '[t]here can, of course, be no knowing acceptance [of the terms of the putative contract] if a State is unaware of the conditions [imposed by the legislation] or is unable to ascertain what is expected of it.'" *Davis*, 526 U.S. at 640 (quoting *Pennhurst*, 451 U.S. at 17).

In assessing whether funding recipients had notice of the scope of Title IX, courts must consider, among other things, the regulatory landscape and existing case law at the time of the alleged violation.  *Id.* at 643–44 (considering whether "the regulatory scheme surrounding Title IX" had provided notice that certain forms of discrimination were prohibited; whether the "common law" had put schools on notice; and what state courts had held when applying

18

analogous laws); *id.* at 647 (considering relevant OCR guidance).

In this case, Harvard lacked notice that any of its actions violated Title IX.  As to the eligibility claims, none of the defendants were on notice that Thomas's eligibility and participation would violate Title IX.  *See* Penn MTD § III.E; *infra* at 19–20 n.8.  But the notice problem is especially pronounced as it pertains to Harvard:  Even if Harvard's frontline merits position were not correct (it is), Harvard at a minimum lacked the requisite *notice* that it could be liable for Thomas's participation in the meet under such an attenuated liability theory.  As previously explained, Title IX liability has always been tied to the recipient's control over the alleged discrimination.  *See supra* at 13.  The Supreme Court has therefore interpreted the statute to "eliminate any 'risk that [Title IX funding] recipient[s] would be liable in damages not for [their] own official decision[s] but instead for [a third party's] independent actions.'"  *Davis*, 526 U.S. at 643 (quoting *Gebser*, 524 U.S. at 290–91).  Against that backdrop, it would be unreasonable to expect Harvard to know that the mere act of hosting a tournament, governed by eligibility rules conceived of and enforced by a separate entity, and attended by participants whom Harvard did not select, would subject Harvard to damages liability under Title IX pursuant to a novel legal theory.  Relying in part on the *Pennhurst* notice principle, the Supreme Court in *Gebser* rejected a plaintiff's attempt to hold a recipient liable for Title IX violations under attenuated theories of liability.  524 U.S. at 286–88.  This Court should do the same.

As to the facilities claim, Harvard had every reason to believe not only that it was not *violating* Title IX, but that it was doing what that law *required* of it.[8]  Finally, as to the statement

---

[8] *See supra* at 14–15 (citing judicial decisions); *cf. Boston Alliance of Gay, Lesbian, Bisexual and Transgender Youth v. U.S. Dep't of Health & Human Servs.*, 557 F. Supp. 3d 224, 244, 246 (D. Mass. 2021) (holding that under *Bostock*, which "applies equally outside of Title VII," discrimination based on transgender status is sex-based discrimination under equal protection clause); *see also, e.g.*, U.S. DOJ, Civil Rights Division, Memorandum re: Application of *Bostock*

and media claims, the plain text of Title IX clearly excludes that conduct from the scope of liability.  *See supra* at 16–18.  In that context, there could not have been the requisite notice.

## CONCLUSION

For the aforementioned reasons, this Court should dismiss all of Plaintiffs' claims against Harvard for lack of jurisdiction.  In the alternative, it should dismiss the suit against Harvard for failure to state a claim.

Dated: April 21, 2025

Victoria L. Steinberg (BBO #666482)
Kristine C. Oren (BBO #705730)
CLOHERTY & STEINBERG LLP
One Financial Center, Suite 1120
Boston, MA 02111
(617) 481-0160
vsteinberg@clohertysteinberg.com
koren@clohertysteinberg.com

Respectfully submitted,

/s/ *Anton Metlitsky*
Anton Metlitsky (*admitted pro hac vice*)
Jennifer B. Sokoler (*admitted pro hac vice*)
David Cohen (*admitted pro hac vice*)
O'MELVENY & MEYERS LLP
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
(212) 326-2000
ametlitsky@omm.com
jsokoler@omm.com
dcohen@omm.com

---

*v. Clayton County* to Title IX of the Education Amendments of 1972 (Mar. 26, 2021) ("Title IX's prohibition of discrimination 'on the basis of' sex would prohibit recipients from discriminating against an individual based on that person's . . . transgender status."), available at https://tinyurl.com/33wf2d2h; EO 13988: Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation, 86 Fed. Reg. 7023 (Jan. 20, 2021) (same); U.S. Dep't of Educ., Enforcement of Title IX of the Education Amendments of 1972 With Respect to Discrimination Based on Sexual Orientation and Gender Identity in Light of *Bostock v. Clayton County*, 86 Fed. Reg. 32637 (June 22, 2021) (establishing OCR's intent to "fully enforce Title IX to prohibit discrimination based on . . . gender identity"); U.S. DOJ & U.S. Dep't of Educ., Fact Sheet: Confronting Anti-LGBTQI+ Harassment in Schools at 1 (June 2021) (noting government would investigate if transgender high school girl was precluded from using girls' bathroom and from trying out for girls' cheerleading team), available at https://tinyurl.com/4cjd3ajf.