**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GRACE ESTABROOK, ELLEN HOLMQUIST, and MARGOT KACZOROWSKI, <br><br> Plaintiffs, <br><br> v. <br><br> THE IVY LEAGUE COUNCIL OF PRESIDENTS, PRESIDENT AND FELLOWS OF HARVARD COLLEGE, TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, and NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, <br><br> Defendants. | Case No. 1:25-cv-10281-WGY |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY THE IVY LEAGUE COUNCIL OF PRESIDENTS**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND ........................................................................................... 2

    A. The Ivy League ..................................................................................................... 2

    B. The NCAA Transgender Eligibility Policy .......................................................... 3

    C. Lia Thomas Competes on the Penn Women's Swimming & Diving Team ........ 3

III. LEGAL STANDARD ....................................................................................................... 4

IV. ARGUMENT .................................................................................................................... 5

    A. Title IX Does Not Apply to The Ivy League Because The Ivy League Does Not Receive Federal Funds ............................................................................ 6

    B. The Ivy League Is Not Subject to Title IX under Plaintiffs' Controlling Authority Contention ............................................................................................ 8

    C. Plaintiffs Have Not Pled a Title IX Claim .......................................................... 12

    D. Plaintiff Estabrook Lacks Standing ..................................................................... 12

    E. The Court Should Dismiss Plaintiffs' Claims with Prejudice ............................. 13

V. CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................... 4, 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................... 5

*Bowers v. NCAA*,
   118 F. Supp. 2d 494 (D.N.J. 2000) ............................................................................. 9

*Cureton v. NCAA*,
   198 F.3d 107 (3d Cir. 1999) ............................................................................ 7, 9, 11

*Doe v. Harvard Univ.*,
   410 F. Supp. 3d 332 (D. Mass. 2019) ............................................................ 5, 11, 12

*Doe v. League Sch. of Greater Boston, Inc.*,
   No. 16-cv-11940, 2017 U.S. Dist. LEXIS 133011 (D. Mass. Aug. 21, 2017) ............. 6, 7

*Doe v. Meisels*,
   No. 14-CV-5725, 2016 U.S. Dist. LEXIS 66740 (E.D.N.Y. May 20, 2016) ................. 8

*Faculty, Alumni, & Students Opposed to Racial Preferences v. Harv. L. Rev. Ass'n*,
   No. 18-12105, 2019 U.S. Dist. LEXIS 133181 (D. Mass. Aug. 8, 2019) .................. 6, 8

*In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*,
   76 F. Supp. 3d 279 (D. Mass. 2015) ........................................................................... 13

*Horner v. Kentucky High School Athletic Association*,
   43 F.3d 265 (6th Cir. 1994) ...................................................................................... 9, 10

*B.P.J. ex rel. Jackson v. West Virginia State Board of Education*,
   98 F.4th 542 (4th Cir. 2024) ......................................................................................... 10

*Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n of Ill., Inc.*,
   134 F. Supp. 2d 965 (N.D. Ill. 2001) ............................................................................. 9

*Macon Tel. Pub. Co. v. Bd. of Regents*,
   350 S.E.2d 23 (Ga. 1986) ............................................................................................. 10

*NCAA v. Smith* ("*Smith I*"),
   525 U.S. 459 (1999) ............................................................................................. passim

*Parker v. Ind. High Sch. Athletic Ass'n*,
 No. 1:09-cv-885, 2010 U.S. Dist. LEXIS 23409 (S.D. Ind. Mar. 11, 2010) ............................9

*Peñalbert-Rosa v. Fortuño-Burset*,
 631 F.3d 592 (1st Cir. 2011) ................................................................................................5

*Rodriguez v. Bos. Pub. Schs.*,
 No. 19-10116, 2019 U.S. Dist. LEXIS 125833 (D. Mass. July 29, 2019) .............................11

*Schatz v. Republican State Leadership Comm.*,
 669 F.3d 50 (1st Cir. 2012) ..................................................................................................2

*Smith v. NCAA* ("*Smith II*"),
 266 F.3d 152 (3d Cir. 2001) .................................................................................................9

*Tingley-Kelley v. Trs. of Univ. of Pa.*,
 677 F. Supp. 2d 764 (E.D. Pa. 2010) ..................................................................................12

*United States DOT v. Paralyzed Veterans of America*,
 477 U.S. 597 ................................................................................................................6, 7, 11

*United States v. Hersom*,
 588 F.3d 60 (1st Cir. 2009) ..................................................................................................7

*Williams v. Board of Regents*,
 477 F.3d 1282 (11th Cir. 2007) ..........................................................................................10

**Statutes**

20 U.S.C. § 1681(a) ...............................................................................................................5, 6

**Other Authorities**

34 C.F.R. § 106.2 ........................................................................................................................6

Federal Rules of Civil Procedure Rule 12(b)(6) .........................................................................5

I.      INTRODUCTION

The Court should dismiss plaintiffs' Title IX claims against The Ivy League Council of Presidents ("The Ivy League") for the threshold reason that The Ivy League is not subject to Title IX.  Title IX applies only to education programs or activities receiving federal financial assistance, and the complaint does not contend that The Ivy League receives such assistance.  No greater authority than the Supreme Court itself has held that Title IX does not apply to an intercollegiate athletic conference, like The Ivy League, simply because it receives payments from member educational institutions that themselves receive federal funds.  *NCAA v. Smith* (*Smith I*), 525 U.S. 459, 470 (1999).

Plaintiffs seemingly try to invoke a narrow exception where a handful of courts outside of the First Circuit have found that an athletic association that exercises "controlling authority" over the athletic programs of its Title IX funded member schools could be subject to Title IX itself.  But even if that exception were consistent with Supreme Court precedent, which it is not, the few courts applying the exception have done so in the fundamentally different circumstance of single-state athletic associations, often acting with state statutory authority, and not to a multi-state, voluntary athletic conference like The Ivy League.  It is hardly surprising that plaintiffs cannot muster allegations establishing that The Ivy League controls the athletic programs of its member schools when The Ivy League's governing document, cited by plaintiffs in their complaint, explicitly leaves such control with the member schools themselves.

The complaint should also be dismissed for the alternative reasons that the alleged injuries and conduct attributed in the complaint to The Ivy League do not state a viable Title IX claim or one that is not time barred.  Moreover, the Court should dismiss Estabrook's claim because she lacks standing.  The Court need not, however, reach those questions because The Ivy League should be dismissed on the predicate basis that Title IX does not apply to it.

1

## II. FACTUAL BACKGROUND

### A. The Ivy League

The Ivy League is an athletic conference established in 1954 by The Ivy Group Agreement. Compl. ¶ 118. Eight academic institutions belong to The Ivy League ("The Ivy League Schools"), including Defendants Harvard University and the University of Pennsylvania ("Penn"). *Id.* ¶ 52. The Ivy Group Agreement provides that "in each institution the academic authorities should control athletics." The Ivy Manual at 143, 150, relevant sections attached to the Declaration of Stephen J. Kastenberg as Ex. 1.[1] Although plaintiffs allege that The Ivy League Schools receive federal funding, they nowhere allege that The Ivy League itself receives or is even the intended indirect recipient of federal funds. Compl. ¶ 55. Instead, they allege that "The Ivy League exercises controlling authority over relevant aspects of the athletic programs and activities of the Ivy League Schools and is thereby a covered entity under Title IX." *Id.* ¶ 56. The Ivy League is a member athletic conference of the National Collegiate Athletic Association ("NCAA"), and all of The Ivy League Schools are themselves members of the NCAA. *Id.* ¶ 54. As a multi-sport member conference of the NCAA, The Ivy League is

> subject to the NCAA through the Article 2.C of the NCAA Constitution which makes it mandatory that all conferences:
>
> a. must adhere to the NCAA Constitution and the principles established by the relevant NCAA Division, including in the conduct of athletics events, and
>
> b. shall comply completely and promptly with the rules and regulations regarding the rules enforcement process existing in each NCAA Division, and

---

[1] The Ivy Manual, including the original Ivy Group Agreement, is cited in and incorporated into the Complaint, ¶¶ 120, 127, and is, therefore, properly considered by the Court at the motion to dismiss stage. *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55–56 (1st Cir. 2012) ("[I]n performing our review [of a trial court's grant of a motion to dismiss], . . . we can consider (a) 'implications from documents' attached to or fairly 'incorporated into the complaint[.]'" (citation omitted)).

2

  c. shall cooperate fully in the rule enforcement process as a condition of membership in the NCAA.

*Id.* ¶ 143. Accordingly, "The Ivy League eligibility rules may be more restrictive than NCAA eligibility rules but not less restrictive than NCAA eligibility rules." *Id.* ¶¶ 131–32.

  **B.** **The NCAA Transgender Eligibility Policy**

  The Ivy League Manual establishes eligibility rules for athletic competitions among The Ivy League Schools; for example, it allows student athletes to compete for no more than four seasons in any sport and requires them to maintain good academic standing. Ex. 1, The Ivy Manual at 35, 38. As of Spring 2021, The Ivy League Manual provided that "The Ivy League is committed to providing inclusive athletics participation opportunities to all qualified students and applies the NCAA's transgender inclusion policies across all League sports." *Id.* at 25.

  In 2010, the NCAA Board of Governors adopted and implemented Association-wide a Policy on Transgender Student-Athlete Participation (the "NCAA Transgender Eligibility Policy"). Compl. ¶ 181. The NCAA Transgender Eligibility Policy, which was in place when the 2021–2022 Ivy League swimming season began, provided that a transgender female student-athlete could compete on a women's NCAA team provided she had completed one calendar year of testosterone suppression treatment. NCAA Transgender Eligibility Policy, attached to the Declaration of Stephen J. Kastenberg as Ex. 2; Compl. ¶ 203.

  **C.** **Lia Thomas Competes on the Penn Women's Swimming & Diving Team**

  The 2022 Ivy League women's swimming championships ("2022 Ivy League Championships") were held at Harvard. Compl. ¶ 2. During the 2021–2022 swimming season, Penn rostered Lia Thomas, a transgender woman, on the women's swimming team. *See id.* ¶¶ 265–311. According to plaintiffs, this decision was made by Penn coaches and administrators. *Id.* Plaintiffs do not allege that The Ivy League made any determinations with respect to Lia

3

Thomas's eligibility to compete on the Penn women's swimming team or at the 2022 Ivy League Championships. Nor do plaintiffs allege that The Ivy League made any determinations as to her compliance with the NCAA Transgender Eligibility Policy.

On January 19, 2022, the NCAA announced a mid-season change to the NCAA Transgender Eligibility Policy. Compl. ¶ 317. The change would have required NCAA student-athletes to follow the eligibility rules of the relevant U.S. Olympic Sport National Governing Body (NGB) or international sport federation. *Id.* At the time, USA Swimming, the U.S. Olympic Sport NGB for swimming, did not have established eligibility policies for transgender athletes. *Id.* ¶ 319. "Thus, the NCAA's January 19, 2022, announcement created immediate ambiguity regarding the eligibility of Thomas" to compete. *Id.* ¶ 321.

On February 1, 2022, USA Swimming adopted eligibility rules for transgender athletes, which required evidence of three years of testosterone suppression to a level below 5 nanomoles per liter and the mitigation of any competitive advantage. Compl. ¶ 328. On February 10, 2022, the NCAA announced that transgender female athletes need only show a testosterone level below the "maximum allowable limit" for their sport within four weeks of a championship; for swimming, the NCAA set the maximum allowable limit at 10 nanomoles per liter. *Id.* ¶¶ 340, 343. Under the NCAA's policy, Lia Thomas qualified and competed at the 2022 Ivy League Championships, where she and Plaintiff Margot Kaczorowski were relay teammates competing against other schools in the 800 Freestyle Relay and the 200 Freestyle Relay, earning third and fourth places, respectively. *See* Compl. ¶ 367. She also swam on a Penn relay team with Plaintiff Grace Estabrook in the 400 Medley Relay, where they earned fourth place. *Id.*

### III.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

4

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating whether a complaint states a claim, the Court must accept all well-pleaded factual allegations as true, but it need not accept as true legal conclusions or "allegations that, though 'not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual.'" *Doe v. Harvard Univ.*, 410 F. Supp. 3d 332, 334 (D. Mass. 2019) (quoting *Peñalbert-Rosa v. Fortuño-Burset*, 631 F.3d 592, 595 (1st Cir. 2011)).

**IV.    ARGUMENT**

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). As a threshold matter, plaintiffs have failed to plausibly allege that The Ivy League receives federal financial assistance, and therefore that Title IX even applies to it. Further, even were The Ivy League subject to Title IX, plaintiffs' complaint would fail as a matter of law for failure to plead facts sufficient to constitute a Title IX violation or one that is not time barred.[2] Thus, for any one of these reasons, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint fails to state a claim upon which relief can be granted and must be dismissed.

---

[2]   The complaint also fails to plausibly allege that The Ivy League, an athletic conference, meets the definition of an "educational institution" or a "program or activity."

Although The Ivy League is not subject to the obligations of Title IX, The Ivy League supports the principles animating Title IX and, in the 2024–2025 school year, became the first NCAA conference to reach 50 years of women's championships.

5

### A. Title IX Does Not Apply to The Ivy League Because The Ivy League Does Not Receive Federal Funds

Title IX applies to "any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a); *see* 34 C.F.R. § 106.2 (defining Federal financial assistance). To state a Title IX claim against an entity, therefore, "the plaintiffs must allege it receives federal funding." *Faculty, Alumni, & Students Opposed to Racial Preferences v. Harv. L. Rev. Ass'n*, No. 18-12105, 2019 U.S. Dist. LEXIS 133181, at *23 (D. Mass. Aug. 8, 2019) (hereinafter "*FASORP*") (dismissing Title IX claim where "plaintiffs allege no facts suggesting [Harvard Law Review Association] is an entity 'that receive[s] federal assistance, whether directly or through an intermediary'" (second alteration in original) (quoting *Smith I*, 525 U.S. at 468)).

Merely benefiting from another entity's receipt of federal financial assistance is not sufficient to subject an entity to Title IX liability. In *Smith I*, the Supreme Court declined to extend Title IX obligations to the NCAA based on its receipt of dues from its member schools who were themselves subject to Title IX, finding that "[a]t most, the [NCAA's] receipt of dues demonstrates that it indirectly benefits from the federal assistance afforded its members. This showing, without more, is insufficient to trigger Title IX coverage." *Id.* at 468; *see also Doe v. League Sch. of Greater Boston, Inc.*, No. 16-cv-11940, 2017 U.S. Dist. LEXIS 133011, at *6–7 (D. Mass. Aug. 21, 2017) (quoting *Smith I*, 525 U.S. at 468) ("'[E]ntities that only benefit economically from federal assistance are not' recipients of federal aid" subject to Title IX.). In *Smith I*, the Supreme Court relied upon its earlier ruling in *United States DOT v. Paralyzed Veterans of America*, holding that Section 504 of the Rehabilitation Act of 1973, which prohibits discrimination on the basis of disability, "covers those who receive [federal] aid, but does not extend as far as those who benefit from it." *Smith I*, 525 U.S. at 467 (quoting *Paralyzed Veterans*, 477 U.S. 597, 607 (1986)).

6

Instead, to be subject to Title IX, an entity must be "the intended recipient[] of the federal legislation providing the assistance." *See United States v. Hersom*, 588 F.3d 60, 65 (1st Cir. 2009) (analyzing *Paralyzed Veterans*, *Smith I*, and other Supreme Court precedent to define the term "Federal financial assistance"). Specifically, "[t]o distinguish between entities that are recipients from those that only benefit economically, courts look to the underlying grant statute to determine (1) whether Congress intended the institution to receive federal funds, and (2) whether the institution has the power to opt out of receiving the funds." *League Sch. of Greater Bos., Inc.*, 2017 U.S. Dist. LEXIS 133011, at *7. This distinction comports with the requirements of Title IX: "Under the program-specific statutes, [including] Title IX, . . . Congress enters into an arrangement in the nature of a contract with the recipients of the funds." *Paralyzed Veterans*, 477 U.S. at 605. "By limiting coverage to recipients, Congress imposes the obligations of [Title IX] upon those who are in a position to accept or reject those obligations as a part of the decision whether or not to 'receive' federal funds." *Id.* at 606; *see also Cureton v. NCAA*, 198 F.3d 107, 118 (3d Cir. 1999) ("But there is no contractual privity between the [government] and the NCAA with respect to Federal financial assistance to the NCAA members. Therefore, the NCAA is not in a position to accept or reject the Federal funds paid to those institutions.").

Conspicuously absent from the complaint are any allegations that The Ivy League itself receives federal funds. Plaintiffs allege only that "[a]ll Ivy League **Schools** are recipients of federal funding." Compl. ¶ 55 (emphasis added).[3] At most, however, this fact suggests that The

---

[3] Even if plaintiffs were to allege that The Ivy League receives dues from the Ivy League Schools, who themselves receive federal assistance, such payments from institutions receiving federal assistance is insufficient to establish Title IX coverage, unless the dues were paid using federal funds that were earmarked for that specific educational purpose.

7

Ivy League "indirectly benefits from . . . federal assistance[,]" which is insufficient to establish Title IX liability against the Ivy League under well-established law, *FASORP*, 2019 U.S. Dist. LEXIS 133181, at *23 (omission in original) (quoting *Smith I*, 525 U.S. at 468); *see also Doe v. Meisels*, No. 14-CV-5725, 2016 U.S. Dist. LEXIS 66740, at *5 (E.D.N.Y. May 20, 2016) (dismissing Title IX claim when the defendant was an "economic beneficiary of those schools' federal funds, but it d[id] not make [the defendant] a recipient under Title IX"), and involves the same fact scenario as in *Smith I*, wherein Title IX was found not to apply. For this reason, under a plain reading of the statute and under Supreme Court precedent, the Court cannot impose the obligations of Title IX upon The Ivy League.

  **B. The Ivy League Is Not Subject to Title IX under Plaintiffs' Controlling Authority Contention**

Plaintiffs' conclusory allegation that The Ivy League "exercises controlling authority over relevant aspects of the athletic programs and activities of the Ivy League Schools," Compl. ¶ 56, is also not sufficient for Title IX to apply. Courts have repeatedly rejected the argument that the NCAA and other voluntary, multistate collegiate or high school sports associations are subject to Title IX liability on the putative basis that they exercise controlling authority over the athletic programs of their member schools. Any other result would be inconsistent with *Smith I*'s holding and reasoning.

In *Smith I*, with respect to the NCAA, the plaintiff argued "that when a recipient cedes controlling authority over a federally funded program to another entity, the controlling entity is covered by Title IX regardless whether it is itself a recipient." *Smith I*, 525 U.S. at 469–70. The Supreme Court declined to adopt this theory of Title IX liability, and on remand the Third

---

  *Smith I*, 525 U.S. at 466, 462 (holding "[d]ues payments [to the NCAA] from recipients of federal funds . . . do not suffice to render the dues recipient subject to Title IX").

8

Circuit rejected the controlling authority theory. *Smith v. NCAA* ("*Smith II*"), 266 F.3d 152, 157 (3d Cir. 2001). According to the Third Circuit, "[t]he fact that the [member] institutions make these decisions cognizant of NCAA sanctions does not mean the NCAA controls them," such that member institutions' federal funding may be imputed to the NCAA. *Id.* at 156 (quoting *Cureton*, 198 F.3d at 116); *see also Parker v. Ind. High Sch. Athletic Ass'n*, No. 1:09-cv-885, 2010 U.S. Dist. LEXIS 23409, at *13 (S.D. Ind. Mar. 11, 2010) (confirming dismissal of Title IX claim against Indiana High School Athletic Association where the plaintiff failed to identify "any case from a court in this circuit holding that the controlling authority theory is valid"); *Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n of Ill., Inc.*, 134 F. Supp. 2d 965, 970–71 (N.D. Ill. 2001) (rejecting controlling authority theory of Title IX applicability "because no administrative enforcement action could be taken against [Amateur Hockey Association of Illinois] for any discriminatory conduct on its part solely because the high schools have ceded to it controlling authority over their hockey programs"); *Bowers v. NCAA,* 118 F. Supp. 2d 494, 527 n.25 (D.N.J. 2000) (rejecting controlling authority argument with respect to the NCAA).

Instead, a handful of courts have allowed plaintiffs to proceed on a controlling authority theory of Title IX applicability only when the plaintiffs plead facts supporting their allegations that state athletic associations exercised complete control over their member schools' athletic programs, often pursuant to state statute. In *Horner v. Kentucky High School Athletic Association*, the court found that the Kentucky High School Athletic Association (KHSAA) was subject to Title IX, although it did not receive direct federal financial assistance, because, pursuant to state statute, the Kentucky State Board of Education "*controls and manages . . .* the state's schools and all programs conducted in the schools." 43 F.3d 265, 272 (6th Cir. 1994). The State Board of Education, in turn, delegated that authority to KHSAA under a "state law

9

[which] expressly permits the Board to designate an agent to manage interscholastic athletics." *Id.*

In *Williams v. Board of Regents*, the court found that the plaintiff had sufficiently alleged that the University of Georgia, "a funding recipient, ha[d] ceded control over one of its programs, the athletic department, to [the University of Georgia Athletic Association ("UGAA")] and provided extensive funding to UGAA [an indirect funding recipient]." 477 F.3d 1282, 1294 (11th Cir. 2007).[4]

Similarly, in *B.P.J. ex rel. Jackson v. West Virginia State Board of Education*, the court found the West Virginia Secondary Schools Activities Commission, which did not directly receive federal funds, was subject to Title IX because it controlled athletics among its member schools "under a West Virginia statute authorizing schools to delegate control, supervision, and regulation of interscholastic athletic events to the Commission." 98 F.4th 542, 554 (4th Cir. 2024) (internal quotation omitted), *cert. denied sub nom. W. Va. Secondary Sch. Activities Comm'n v. B. P. J.*, 145 S. Ct. 568 (2024). In so holding, the Fourth Circuit "note[d] several key differences between the NCAA and state athletic associations, including that the NCAA spans every state and . . . has no statutory authority to control the athletic programs of its member schools." *Id.* These key differences apply equally to The Ivy League. Like the NCAA, The Ivy League spans multiple states and has no statutory authority to control its members' athletic programs.

---

[4] The Georgia Supreme Court has recognized that "the [University of Georgia] Athletic Association is the management tool which [the President of the University of Georgia] uses to carry out his responsibility to control the University's intercollegiate athletic program." *Macon Tel. Pub. Co. v. Bd. of Regents*, 350 S.E.2d 23, 25 (Ga. 1986).

10

This Court should reject plaintiffs' strained attempt to extend the reach of Title IX to it. Under Title IX, "the recipient's acceptance of the [federal] funds triggers coverage under the nondiscrimination provision." *Paralyzed Veterans*, 477 U.S. at 605.  The Court should not expand the basis of Title IX liability beyond the purpose and language of the statute by adopting the controlling authority theory against The Ivy League, which has not chosen to accept federal funds.  *C.f. Cureton*, 198 F.3d at 118 ("[A] court should be circumspect in imposing Title VI obligations on an entity which is not a direct recipient of Federal financial assistance.").  Indeed, the Court could not apply this theory to The Ivy League without trampling the Supreme Court's decision in *Smith I*.

Even if this Court accepted that plaintiffs' controlling authority theory of Title IX liability were viable against The Ivy League as a multi-state athletic conference with no state statutory authority, which it should not, plaintiffs' Title IX claim still fails because they do not allege facts demonstrating The Ivy League actually controls the athletic programs of The Ivy League Schools.  Plaintiffs' conclusory allegation that "The Ivy League exercises controlling authority over relevant aspects of the athletic programs and activities of the Ivy League Schools," unsupported as it is by any plausible factual allegations, is inadequate.  Compl. ¶ 56.  The Court need "not accept as true legal conclusions or allegations that . . . are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual.'" *Doe v. Harvard Univ.*, 410 F. Supp. 3d at 334 (cleaned up); *see also Rodriguez v. Bos. Pub. Schs.*, No. 19-10116, 2019 U.S. Dist. LEXIS 125833, at *6 (D. Mass. July 29, 2019) (quoting *Iqbal*, 556 U.S. at 678) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions and 'threadbare recitals of the elements of a cause of action.'").  To the contrary, The Ivy League is alleged by Plaintiffs merely

11

to "coordinate[] the athletic activities of the Ivy League Schools[.]" Compl. ¶ 53. And, The Ivy Group Agreement confirms each Ivy League School retains control over its athletics programs. Ex. 1, The Ivy Manual at 150 ("[I]n each institution the academic authorities should control athletics."). The Court should dismiss plaintiffs' complaint as to The Ivy League because plaintiffs cannot assert Title IX claims against The Ivy League under any theory.

   **C.**  **Plaintiffs Have Not Pled a Title IX Claim**

Even if, *arguendo,* Title IX applied to The Ivy League, which it does not, plaintiffs have not pled an adequate or timely Title IX claim on the merits. In order to state a Title IX claim, a plaintiff must plead facts that show: "(1) she was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2) that the program receives federal financial assistance; and (3) that her exclusion was on the basis of her gender." *Doe v. Harvard Univ.*, 410 F. Supp. 3d at 334 (quoting *Tingley-Kelley v. Trs. of Univ. of Pa.*, 677 F. Supp. 2d 764, 775 (E.D. Pa. 2010)). Plaintiffs have failed to meet this standard, for the reasons set forth in Harvard's Memorandum in Support of the Motion to Dismiss § II and Penn's Memorandum in Support of its Motion to Dismiss §§ III.B–E, all of which sections The Ivy League adopts and incorporates herein. Additionally, as set forth in Penn's Memorandum in Support of its Motion to Dismiss § III.A, which section The Ivy League adopts and incorporates herein, Plaintiffs' claims should in any event be dismissed as time-barred. Plaintiffs have not pled any conduct specific to The Ivy League that would state either a claim on the merits or a timely claim in light of the incorporated arguments advanced by our co-defendants.

   **D.**  **Plaintiff Estabrook Lacks Standing**

Plaintiff Estabrook lacks Article III standing to pursue Title IX claims because she has not alleged that she suffered any cognizable injury, as set forth in NCAA's Memorandum in

12

Support of its Motion to Dismiss § IV, which section The Ivy League adopts and incorporates herein. Accordingly, the Court should dismiss her claim.

### E. The Court Should Dismiss Plaintiffs' Claims with Prejudice

Even if the Court were to give plaintiffs leave to amend, they would not be able to state Title IX claims against The Ivy League because they cannot allege it is a recipient of federal funding. "Dismissal with prejudice is appropriate where the defect in the claim is irremediable, such as where there is no basis in law for this plaintiff to bring this particular claim against this defendant (even if properly pleaded), . . . and refiling could do nothing to cure the infirmity." *In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, 76 F. Supp. 3d 279, 288 (D. Mass. 2015). Because plaintiffs have no basis to bring Title IX claims against The Ivy League, the Court should dismiss their claims against The Ivy League with prejudice.

## V. CONCLUSION

For the foregoing reasons, The Ivy League respectfully requests that this Court dismiss plaintiffs' claims against The Ivy League with prejudice.

Dated: April 21, 2025

/s/ *Stephen J. Kastenberg*
Stephen J. Kastenberg (admitted *pro hac vice*)
Elizabeth P. Weissert (admitted *pro hac vice*)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
T: 215-665-8500
F: 215-864-8999
Kastenberg@ballardspahr.com
WeissertE@ballardspahr.com

Caroline S. Donovan (BBO No. 683274)
Howard Weiss (BBO No. 709814)
cdonovan@foleyhoag.com
hweiss@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
Telephone: 617.832.1000

*Attorneys for The Ivy League*