# Exhibit 1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RILEY GAINES, REKA GYORGY, ) 
KYLEE ALONS, KAITLYNN WHEELER, ) 
AINSLEY ERZEN, ELLIE EADES, ) 
LILY MULLENS, SUSANNA PRICE, ) 
CARTER SATTERFIELD, KATE ) 
PEARSON, KATIE BLANKINSHIP, ) 
JULIANNA MORROW, SWIMMER A, ) 
SWIMMER B, TRACK ATHLETE A, ) 
AND VOLLEYBALL ATHLETE A, ) 
                                 ) 
             Plaintiffs, ) 
                                 )   No. _____
                                 ) 
         v.                         ) 
                                 )   **COMPLAINT - CLASS ACTION**
                                 ) 
NATIONAL COLLEGIATE ATHLETIC )   **JURY TRIAL DEMANDED**
ASSOCIATION, UNIV. SYSTEM OF ) 
GEORGIA, GEORGIA TECH, UNIV. OF ) 
GEORGIA, UNIV. OF N. GEORGIA, ÁNGEL ) 
CABRERA, Georgia Tech President in his ) 
individual and official capacities, MEMBERS OF ) 
THE BOARD OF REGENTS OF THE UNIV. ) 
SYSTEM OF GEORGIA, in their individual and ) 
official capacities: DOUG ALDRIDGE, TOM ) 
BRADBURY, RICHARD "TIM" EVANS, W. ) 
ALLEN GUDENRATH, ERIN HAMES, ) 
BÁRBARA RIVERA HOLMES, SAMUEL D. ) 
HOLMES, C. THOMAS HOPKINS, JR., MD, ) 
JAMES M. HULL, CADE JOINER, PATRICK C. ) 
JONES, C. EVERETT KENNEDY, III, SARAH- ) 
ELIZABETH LANGFORD, RACHEL B. ) 
LITTLE, LOWERY HOUSTON MAY, JOSE R. ) 
PEREZ, NEIL L. PRUITT, JR., HAROLD ) 
REYNOLDS, SACHIN SHAILENDRA, T. ) 
DALLAS SMITH, MAT SWIFT, JAMES K. ) 
SYFAN, III, DON L. WATERS, and JOHN ) 
DOES 1-50, ) 
                                 ) 
            Defendants.           )

## COMPLAINT FOR DAMAGES, DECLARATORY, EQUITABLE, AND CLASS RELIEF AND DEMAND FOR JURY TRIAL

*"I swam the 500 free at NCAA's on March 17, 2022, where I got 17th, which means I didn't make it back to the finals . . . I'm a 5th year senior. . . This is my last college meet ever and I feel frustrated. It feels like that final spot was taken away from me because of the NCAA's decision to let someone who is not a biological female compete. . . It hurts me, my team and other women in the pool."*

**Reka Gyorgy, Virginia Tech Univ. Swimmer, Letter to NCAA, March 20, 2022**

## INTRODUCTION

### The Beginning

1.    Riley Gaines, Reka Gyorgy, Kylee Alons, Kaitlyn Wheeler, Lily Mullens, Susanna Price, Carter Satterfield, Kate Pearson, Katie Blankinship, Julianna Morrow and Swimmer A and Swimmer B (both proceeding under a pseudonym to protect them from retribution and reprisal) are like a lot of young girls who grow up in the United States, and indeed around the world, who enjoy a deep connection with swimming that fills their childhood days with purpose and provides them a pathway to grow in confidence toward womanhood. The glistening waters of the pool, routines of practice, relationships with teammates and camaraderie in the locker room became these girls' safe spaces as they grew up.

2.    For Ainsley Erzen, Ellie Eades, Track Athlete A, and Volleyball Athlete A, the field of play was different, but the story the same. For each Plaintiff,

36.     "A college, university, or other postsecondary institution, or a public system of higher education" is an entity described by 34 C.F.R. § 106.2(h)(1).

37.     A private organization which receives federal financial assistance or "[w]hich is principally engaged in the business of providing education" is an entity described by 34 C.F.R. § 106.2(h)(3).

38.     All, or virtually all, NCAA members are entities described by 34 C.F.R. § 106.2(h)(1) and/or (h)(3).

39.     In *Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 469 (1999), the U.S. Supreme Court decided that the NCAA was not covered by the predecessor to 34 C.F.R. § 106.2(i) merely because the Association received dues from recipients of federal funds.

40.     In *NCAA v. Smith*, however, the Court was careful to point out that its decision was "narrow" and addressed only the question of whether *the receipt of dues alone* from colleges and universities created Title IX coverage. *NCAA v. Smith*, 525 U.S. at 469.

41.     Both Smith and the United States as *amicus curiae* argued that the NCAA should be accountable under Title IX as colleges and universities are recipients of federal financial assistance and when "a recipient cedes controlling authority over a federally funded program to another entity, the controlling entity is

covered by Title IX regardless whether it is itself a recipient." *NCAA v. Smith*, 525 U.S. at 469-70.

42.     Yet, because this basis for Title IX coverage of the NCAA had *not* been raised below and was only raised for the first time at the Supreme Court by *Smith* and the U.S. government, the Court declined to consider the ceding control argument as a potential ground for Title IX coverage of the NCAA.

43.     Subsequently, courts have applied the ceding control standard to find Title IX coverage over athletic associations and other entities. *See*, *e.g.*, *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1294 (11th Cir. 2007) (applying the ceding control argument applicable to the University of Georgia Athletic Association); *A. B. by C.B. v. Hawaii State Dep't of Educ.*, 386 F. Supp. 3d 1352, 1357 (D. Haw. 2019) (applying ceding control argument to Oahu Interscholastic Association); *Barrs v. Southern Conference*, 734 F. Supp. 2d 1229, 1235 (N.D. Ala. 2010) (collegiate athletic conference that governed, regulated, operated, and controlled intercollegiate athletics of its member schools could be liable under Title IX if member schools delegated and assigned authority to do so to conference); *Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n,* 80 F.Supp.2d 729, 733–34 (W.D. Mich.2000); *see also Horner v. Kentucky High Sch. Ath. Ass'n*, 43 F.3d 265, 272 (6th Cir.1994) (Kentucky High School Athletic Association

properly sued under Title IX where it had control over interscholastic athletic programs that were receiving federal financial assistance).

44.     Therefore, the instant case presents the opportunity for a decision on the issue expressly left open by the U.S. Supreme Court in *NCAA v. Smith* — Title IX's applicability to the NCAA because colleges and universities which are recipients of federal financial assistance cede control over aspects of college athletics to the NCAA.

45.     It is beyond question that NCAA member educational institutions delegate rulemaking and enforcement authority to the NCAA over college athletic programs and that such programs provide a significant aspect of the student experience at the NCAA's member colleges and universities.

46.     In fact, the NCAA recently took just this position in *NCAA v. Alston*, agreeing that: "the NCAA and its member schools . . . oversee intercollegiate athletics 'as an integral part of the undergraduate experience.'" *NCAA v. Alston*, 594 U.S. at 94 quoting "Brief for Petitioner [NCAA] in No. 20–512, at 31." *Id.*

47.     In *Alston* the NCAA admitted it engages in a "joint venture" with colleges and universities, conceding thereby that it establishes rules which guide and control important aspects of member institutions' mission related to college athletics. *See NCAA v. Alston*, 594 U.S. at 87-90.

48.     "[F]or a joint venture to exist, *there must be* not only a joint interest in the purpose of the enterprise ... but also an equal right, express or implied, to direct and *control* the conduct of one another[.]" *Taylor v. Texaco, Inc.*, 510 F. Supp. 2d 1255, 1262 (N.D. Ga. 2007) (cleaned up; emphasis added). "The element of mutual control is a crucial element of a joint venture." *Id.*

49.     Thus, the NCAA's members covered by Title IX have ceded control over the rules and regulation of collegiate athletics to the NCAA. This makes the Association subject to Title IX.

50.     Should the NCAA contest whether it exercises control over aspects of intercollegiate sport, making it accountable under Title IX, Plaintiffs are entitled to discovery on this question and other factors that make the NCAA subject Title IX.

51.     Furthermore, this case raises the question of whether the NCAA as an unincorporated association established by Title-IX-covered-entities satisfies the definition of 34 C.F.R. § 106.2(h)(4), *see supra* at ¶ 35, thereby imposing Title IX accountability upon the Association for that reason as well.

52.     A third basis for NCAA liability for certain Title IX violations is 42 U.S.C. § 1983 which makes the NCAA liable for violations of Title IX undertaken under color of law, such as the locker room violations described below.

Dated: March 14, 2024

Respectfully submitted,

*/s/ William Bock III*

William Bock III, Atty. No. 14777-49[108]
Kevin D. Koons, Atty. No. 27915-49[109]
Kroger Gardis & Regas, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Tel: (317) 692-9000
Fax: (317) 264-6832
E-mail:   wbock@kgrlaw.com
Email:    kkoons@kgrlaw.com

*/s/ Thomas C. Rawlings*
*/s/ Bryan P. Tyson*

Thomas C. Rawlings, Ga. Bar No. 595795
Bryan P. Tyson, Ga. Bar No. 515411
Deborah A. Ausburn, Ga. Bar No. 028610
Taylor English Duma LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Tel: (770) 434-6868
Fax: (770) 434-7376
E-mail: trawlings@taylorenglish.com
E-mail: btyson@taylorenglish.com
E-mail: dausburn@taylorenglish.com

*ATTORNEYS FOR PLAINTIFFS*

---

[108] Application for admission pro hac vice pending.
[109] Application for admission pro hac vice pending.