UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GRACE ESTABROOK, ELLEN HOLMQUIST, and MARGOT KACZOROWSKI,<br><br>  Plaintiffs,<br><br>  v.<br><br>THE IVY LEAGUE COUNCIL OF PRESIDENTS, PRESIDENT AND FELLOWS OF HARVARD COLLEGE, TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, and NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br><br>  Defendants. | **Leave to file granted on May 27, 2025.**<br><br>Civil Action No. 1:25-CV-10281 |

**DEFENDANT TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................... | 1 |
| II. | ARGUMENT ........................................................................................................... | 1 |
| | A.  Plaintiffs' Claims Are Time-Barred........................................................... | 1 |
| | B.  Plaintiffs' Claims Fail Because Excluding Thomas from the Ivy League Championships Would Have Violated Title IX Given Her Eligibility Under the NCAA Policy. ........................................................................... | 3 |
| | C.  Title IX Does Not Require Sex Separate Teams. ...................................... | 4 |
| | D.  Plaintiffs Fail To Plead An Equal Opportunity Violation. ....................... | 5 |
| |     i.  Plaintiffs Fail To Plead An Effective Accommodation Claim. ................. | 6 |
| |     ii. Plaintiffs Fail To Plead An Equal Treatment Claim.................................. | 7 |
| | E.  Penn Had a Strong Basis in Evidence To Believe That It Would Violate Title IX If It Excluded Thomas from the Ivy League Championships. .................. | 9 |
| III. | CONCLUSION ........................................................................................................ | 10 |

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                             **Page(s)**

*Blackstone Realty LLC v. FDIC*,
    244 F.3d 193 (1st Cir. 2001) ............................................................................................. 10

*Brannum v. Overton Cnty. Sch. Bd.*,
    516 F.3d 489 (6th Cir. 2008) ............................................................................................... 7

*Cape v. Tenn. Secondary Sch. Athletic Ass'n*,
    563 F.2d 793 (6th Cir. 1977) ............................................................................................... 4

*Clark ex rel. Clark v. Ariz. Interscholastic Ass'n*,
    695 F.2d 1126 (9th Cir. 1982) ............................................................................................. 4

*T.W. ex rel. Clemons v. Shelby Cnty. Bd. of Educ.*,
    818 F. App'x 453 (6th Cir. 2020) ........................................................................................ 5

*Cohen v. Brown Univ.*,
    991 F.2d 888 (1st Cir. 1993) ............................................................................................... 9

*Dantzler, Inc. v. Empresas Berríos Inventory & Ops., Inc.*,
    958 F.3d 38 (1st Cir. 2020) ................................................................................................. 7

*Del. State Coll. v. Ricks*,
    449 U.S. 250 (1980) ............................................................................................................ 2

*Doe v. Univ. of Mass. – Amherst*,
    2015 U.S. Dist. LEXIS 91995 (D. Mass. July 14, 2015) ................................................... 8

*Forrester Winne v. Nat'l Coll. Student Loan Trust
    2005-1*, 2017 U.S. Dist. LEXIS 131174 (D. Maine Aug. 17, 2017) ................................. 6

*Gomes v. Rhode Island Interscholastic League*,
    469 F. Supp. 659 (D.R.I.), *vacated and dismissed as moot at the time of
    appeal*, 604 F.2d 733 (1st Cir. 1979) .................................................................................. 5

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167 (2005) ............................................................................................................ 8

*LaChapelle v. Berkshire Life Ins. Co.*,
    142 F.3d 507 (1st Cir. 1998) ............................................................................................... 1

*Lopez v. Garland*,
    116 F.4th 1032 (9th Cir. 2024) ........................................................................................... 9

*Martin v. Clemson University*,
    654 F. Supp. 2d 410 (D.S.C. 2009) .................................................................................... 2

*McCoy v. Mass. Inst. of Tech.*,
   950 F.2d 13 (1st Cir. 1991) ..................................................................................... 10

*Oirya v. Auburn Univ.*,
   No. 3:17-cv-681-WC, 2019 WL 4876705 (M.D. Ala. Oct. 2, 2019), *aff'd*, 831
   F. App'x 462 (11th Cir. 2020) ................................................................................... 2

*Ollier v. Sweetwater Union High Sch. Dist.*,
   2014 U.S. Dist. LEXIS 35259 (C.D. Cal. Mar. 17, 2014) ......................................... 9

*Soule v. Conn. Ass'n of Schools*,
   755 F. Supp. 3d 172 (D. Conn. 2024) ....................................................................... 7

*Tenn. v. Dep't of Educ.*,
   104 F.4th 577 (6th Cir. 2024) .................................................................................... 4

*Tolliver v. Prairie View A&M, Univ.*,
   No. H-18-1192, 2018 WL 4701571 (S.D. Tex. Oct. 1, 2018) ................................... 2

*U.S. v. Virginia*,
   518 U.S. 515 (1996) ................................................................................................... 7

## Other Authorities

34 C.F.R. § 106.21 ........................................................................................................... 6, 7

34 C.F.R. § 106.41 ........................................................................................................... 4, 5

44 Fed. Reg. 71,413 .................................................................................................... 5, 6, 8

Dep't of Education 1990 Investigator's Manual,
   https://files.eric.ed.gov/fulltext/ED400763.pdf ..................................................... 8, 9

## I.  INTRODUCTION

Plaintiffs' opposition pretends that Title IX's basic rules regarding claim accrual do not apply to Plaintiffs' claims, and disavows voluminous allegations making this a Pennsylvania dispute for statute of limitations purposes. On the merits, it spills unnecessary ink on the culture war around the definition of male and female, when Penn accepted Plaintiffs' preferred definitions for the purposes of its motion. It then responds to arguments that appear nowhere in Penn's opening brief – fighting battles Plaintiffs apparently wish they had. And perhaps most glaringly, it completely ignores the framework for pleading an equal opportunity claim, like the one asserted here, in favor of meshing together words and phrases without tethering them to what is actually demanded by Title IX's regulations and interpretive guidance. There is, however, one thing Plaintiffs' opposition definitely got right: "this case is not that complicated." (Dkt. 83 at p. 22.) Plaintiffs' untimely claims should be dismissed now.

## II.  ARGUMENT

### A.  Plaintiffs' Claims Are Time-Barred.

As Penn explained in its moving papers, Plaintiffs' claims are time barred. (*See* Dkt. 67 at pp. 10-14.) In opposition, Plaintiffs hope that the Court will avoid the issue altogether. (Dkt. 83 at p. 56.) This the Court cannot do. "Granting a motion to dismiss based on a limitations defense is entirely appropriate" where, as here, "the pleader's allegations leave no doubt that an asserted claim is time-barred." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998) (collecting cases). Plaintiffs have done just that.

Plaintiffs ask this Court to turn a blind eye to nearly 50 Complaint paragraphs alleging Thomas' participation on the women's swim team for the entire 2021-2022 season. (Dkt. 1 ¶¶ 63-64, 265-311.) Those facts leave no doubt that their claims accrued more than three years ago and, thus, are barred under either the Pennsylvania or Massachusetts statute of limitations.[1]

---

[1] Plaintiffs' argument that "all the injuries" occurred in Massachusetts is in conflict with their Complaint, which puts at issue Penn's decision to roster Thomas on the women's team, which was made and communicated to them in Pennsylvania. (*See* Dkt. 67 at pp. 13-14.) Pennsylvania's two year statute of limitations should apply.

1

Plaintiffs seek to shift the landscape, arguing that the clock started to run "at the Ivy League Championships," or "when the NCAA **confirmed** on February 10, 2022" that the Ivy League Championships would proceed under the already existing 2010 NCAA Policy. (Dkt. 83 at pp. 55-56) (emphasis added). But the statute of limitations under Title IX does not run from when the effects of a decision are felt, nor from when that decision is "confirmed." Rather, the "limitations periods [] commence[s] -- at the time the [] decision was made and communicated . . . . That is so even though one of the *effects* of the [decision] . . . did not occur until later." *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980). Plaintiffs' suit is premised on Penn's compliance with the 2010 Policy, which began well before the Championships (as Plaintiffs concede in their Complaint).

Penn cited substantial law in its moving brief on the accrual of Title IX claims. Recognizing its impact, Plaintiffs seek to distance themselves from that law claiming it does not arise in the context of "athletic competition."[2] But that is arguing against how law works. The authority Penn cited governs the accrual of claims in Title IX cases generally. That authority, in turn, applies the Supreme Court's reasoning in *Ricks* to Title IX in a straightforward manner. Plaintiffs offer this Court no principled reason why that law—clear as it is—does not apply here. And that law holds the possibility of a change (*e.g.*, an appeal may be granted; a policy may change; a decision may be reconsidered) does not otherwise restart limitations clocks already ticking.

For example, in *Martin v. Clemson University*, 654 F. Supp. 2d 410, 421–22 (D.S.C. 2009), the court applied the Supreme Court's holding in *Ricks* to find the plaintiff's claim accrued when she was denied tenure, and that "[t]he fact that she subsequently appealed that denial of tenure did not restart the clock." Similarly, in *Tolliver v. Prairie View A&M, Univ.*, No. H-18-1192, 2018 WL 4701571, at *2 (S.D. Tex. Oct. 1, 2018), the plaintiff's "request to overturn [his] expulsion did not delay the accrual of his claims arising from the expulsion." More could be cited.[3] In these cases,

---

[2] It bears noting that Plaintiffs do not cite any "athletic competition" cases in their brief, nor do they cite cases from factual situations that they believe more closely mirror "athletic competition."

[3] The court in *Oirya v. Auburn Univ.*, No. 3:17-cv-681-WC, 2019 WL 4876705, at *14 (M.D. Ala. Oct. 2, 2019), *aff'd*, 831 F. App'x 462 (11th Cir. 2020), collecting authority, dismissed a Title IX claim as time-barred, holding the limitations period began to run on the date the plaintiff was told he would be expelled from the university despite the university's "willingness to review that decision and allow him to reapply."

2

the plaintiffs' appeals meant that the decision *could* change. The NCAA's deliberations in February 2022 certainly meant the policy *could have* changed. But it did not. The decision already communicated to Plaintiffs—that Thomas was eligible to compete on the women's team—was simply "confirmed"—as Plaintiffs concede. The clock did not restart.

> **B.    Plaintiffs' Claims Fail Because Excluding Thomas from the Ivy League Championships Would Have Violated Title IX Given Her Eligibility Under the NCAA Policy.**

In its moving papers, Penn explained that singling out Thomas for exclusion from the Ivy League Championships, *despite her being eligible under the NCAA Policy in place at the time,* would have constituted discrimination on the basis of her sex,[4] and therefore violate Title IX under *Bostock*. (Dkt. 67 at pp. 14-17.) In opposition, Plaintiffs do not refute Penn's arguments. Instead, Plaintiffs again seek to shift the landscape. Plaintiffs assert that "the Ivies [] argue that Title IX requires allowing trans-identifying men to compete in women's collegiate athletics." (Dkt. 83 at p. 14.) Not so. That was not and is not what Penn is arguing.

Rather, Penn explained in its opening papers that the 2010 NCAA Policy allowing athletes to participate on sports teams that matched their gender identities if certain conditions were met was lawful under Title IX's flexible regulatory scheme, which allows, but *does not require*, separation of sports teams based on "biological sex" or sex at birth. (*See* Dkt. 67 at pp. 17-19.) While the NCAA's 2025 Policy is not at issue, a policy that separates teams based on sex assigned at birth may in many circumstances *also* comport with Title IX under the statute's permissive and flexible regulatory scheme. (*See id.*) Thus, Penn was not arguing (at least on this issue) that Title IX is absolute in either direction. The relevant question before the Court is much narrower: During the 2021-2022 season, *with the 2010 NCAA Policy in place and unchanged*, would Penn have violated Title IX if it had plucked Thomas, and only Thomas, out of the Ivy League Championships

---

[4] Penn accepted Plaintiffs' definition of "sex" as true for purposes of its motion. As set forth in Penn's motion, singling out Thomas in the manner Plaintiffs propose would have discriminated against her on the basis of her biological sex or sex at birth (male). (*See* Dkt. 67 at pp. 14-17.)

at the end of the season, despite there being no change to the 2010 Policy, because of her sex at birth? The answer under the reasoning of *Bostock* is yes.

      **C.**      **Title IX Does Not Require Sex Separate Teams.**

Unable to refute Penn's authority from the Third, Fourth, Sixth, and Ninth Circuits that sex separation is an *option*, not a requirement, Plaintiffs again try to muddy the waters. Plaintiffs assert that Title IX "permits" sex-separate teams (Penn agrees) (*see* Dkt. 83 at p. 17 § I(B) heading), that Title IX "endorses" sex-separated teams (*see id.* § I(C)(1) heading) (Penn would agree Title IX's regulations do so if Plaintiffs acknowledged that such endorsement permits but does not require sex separate teams), and that Title IX "requires" sex-separated teams (*id.* at p. 18).[5] But Plaintiffs do not provide any authority confirming that sex separation is *required*.

Plaintiffs cite two equal protection cases—*Clark ex rel. Clark v. Ariz. Interscholastic Ass'n*, 695 F.2d 1126 (9th Cir. 1982) and *Cape v. Tenn. Secondary Sch. Athletic Ass'n*, 563 F.2d 793 (6th Cir. 1977)—which do no more than recognize that sex separation in sports *may be* justifiable. However, even authority recognizing that sex separation is an option recognizes that Title IX's permissive structure equally allows institutions to comply with Title IX in other ways, including division by gender identity. *See, e.g.*, *Tenn. v. Dep't of Educ.*, 104 F.4th 577, 610–11 (6th Cir. 2024) ("[Title IX] regulations *permit, but do not require*, aid recipients to organize their athletics programs and facilities by biological sex. Schools could . . . *separate programs and facilities by gender identity*.") (emphasis added). Plaintiffs' opposition does not address this fundamental point.

Plaintiffs' position that the Title IX regulations exclusively protect and preserve athletic opportunities only for *women* is also wrong. (Dkt. 83 at p. 18.) The regulations cited by Plaintiffs make no reference to "women," "girls," or any synonym. 34 C.F.R. § 106.41(b) (providing that "members of th[e] sex [that] have previously been limited" must be allowed to try out for a team where a school only sponsors a team for one sex). And Plaintiffs' assertion that the regulations do

---

[5] While Plaintiffs try to "pull their punch" by claiming that they are merely contending that sex separated teams are required when "necessary to ensure equal opportunity for women," they cannot help but make clear their position that it is always necessary, and therefore, always required. (Dkt. 83 at p. 17) ("Biological differences between men and women prevent meaningful competition between men and women for all sports contested at the collegiate level in NCAA Division I, II and/or III.") (Dkt. 1 ¶ 219).

not authorize a man to try out for a women's team if there is no separate men's team in the sport (*see* Dkt. 83 at p. 19) is directly refuted by case law.[6]

### D. Plaintiffs Fail To Plead An Equal Opportunity Violation.

Plaintiffs' opposition plucks out sound bites from Title IX cases that have no relationship to the dispute here. Penn is not accused in this case of singling out any of the Plaintiffs because of their sex, a claim that exists under the statutory language. Instead, Plaintiffs allege that by following the NCAA policy that allowed Thomas to swim on the women's team, Penn denied them "equal opportunity." (Dkt. 83 at p. 47.) But "equal opportunity" claims – which are found only in the Title IX regulations and Policy Guidance and not in the statute's text – follow a specific regulatory structure, which Plaintiffs do not come close to pleading.[7]

As explained by numerous courts, Title IX's "equal opportunity" requirement is separated into two types of claims: (1) effective accommodation claims, and (2) equal treatment claims. *See* 34 C.F.R. § 106.41(c). The implementing regulations set forth one factor relating to "effective[] accommodat[ion]" in 34 C.F.R. § 106.41(c)(1), and nine factors relating to "equal treatment" in § 106.41(c)(2)-(10). Plaintiffs' opposition meshes everything together, tries to ignore the Policy Interpretation, and then argues that this Court need not hear voluminous evidence from "every nook and cranny of the Penn and Harvard athletic departments" to determine whether allowing Thomas to swim violated Title IX because "[t]his case is not that complicated." (Dkt. 83 at p. 22.). Penn agrees. Title IX's regulations and interpretive guidance set forth how an equal opportunity violation must be pleaded. Plaintiffs have not done so.

---

[6] *See Gomes v. Rhode Island Interscholastic League*, 469 F. Supp. 659 (D.R.I.), *vacated and dismissed as moot at the time of appeal*, 604 F.2d 733 (1st Cir. 1979) (granting a preliminary injunction to prevent school officials from prohibiting a male plaintiff from playing on the girls' high school volleyball team where no boys' team was offered because the prohibition would violate Title IX and its regulations).

[7] Penn did not argue that Title IX's regulations preclude individuals from bringing "equal opportunity" claims (Dkt. 83 at pp. 29-30), but rather demonstrated that to bring such claims, an individual plaintiff must plead that there were meaningful group differences that impacted her. *See, e.g.*, 44 Fed. Reg. 71,421 (Dec. 11, 1979) (referencing "equal opportunity" claims as applying to "women athletes, *as a class*"); *T.W. ex rel. Clemons v. Shelby Cnty. Bd. of Educ.*, 818 F. App'x 453, 463 (6th Cir. 2020) ("Although the tryouts had a negative effect on [the plaintiff] as an individual, there is no evidence that holding tryouts negatively impacted girls' athletic opportunities [] overall.").

### i. Plaintiffs Fail To Plead An Effective Accommodation Claim.

Plaintiffs first argue that Penn claimed that its athletic programs could not be scrutinized under Title IX because Penn looks to provide "participation opportunities for male and female students . . . in numbers substantially proportionate to their respective enrollments." (Dkt. 83 at p. 27.) Plaintiffs also claim that Penn argued such proportionality was the "Be All End All of Title IX Analysis" (*Id.* at pp. 26-27). Penn never made such an argument. As Penn explained, effective accommodation claims under 34 C.F.R. § 106.21(c)(1) are assessed under a three-part test that utilizes statistical evidence (among other things) to compare all of the sports offered to men and women at an institution. 44 Fed. Reg. 71,413, 71,417 (Jan. 16, 1996). As such, an effective accommodation claim cannot be premised on one swimmer competing in one swim meet. Plaintiffs did not directly dispute that this is the case.[8]

Then, in the section of their brief addressing their claims under an "equal treatment" theory pursuant to 34 C.F.R. § 106.21(c)(2)-(10), Plaintiffs argue that Penn suggested a Title IX claim cannot "be grounded solely" upon 34 C.F.R. § 106.21(c)(1), which is an "effective accommodation" claim. (Dkt. 83 at p. 30.) Penn never made such an argument. A claim can be based "solely upon" 34 C.F.R. § 106.21(c)(1). Plaintiffs did not come close to doing it.

Plaintiffs' opposition also throws a Hail Mary and tries to introduce statistical disparities among men's and women's athletics *writ large* at Penn. (*Id.* at pp. 28-29.) That will not work. Plaintiffs' opposition cannot cure a deficient Complaint by introducing new factual allegations in opposition. *See Forrester Winne v. Nat'l Coll. Student Loan Trust 2005-1*, 2017 U.S. Dist. LEXIS 131174, at *15-16 (D. Maine Aug. 17, 2017). But more importantly, this case has nothing to do with improperly claimed programmatic disparities. It is about one transgender woman swimming

---

[8] *McCormick* does not help Plaintiffs. First, the plaintiffs in *McCormick* brought "equal treatment" claims under 34 C.F.R. § 106.21(c)(3), not "effective accommodation" claims and the discussion cited by Plaintiffs at p. 23 of their brief did not concern 34 C.F.R. § 106.21(c)(3). Second, all that *McCormick* did was find that a disparity that denied an entire girls' soccer team the ability to participate in post-season competition was significant enough to establish an "equal treatment" violation under 34 C.F.R. § 106.21(c)(3) (relating to scheduling of games and practice time), not "effective accommodation" claims. This is not a case about schedules or practice times.

in one swim meet and the alleged impact that had on Plaintiffs. In fact, right after citing alleged program statistics, Plaintiffs concede as much. (*See* Dk. 83 at p. 29.)[9]

### ii. Plaintiffs Fail To Plead An Equal Treatment Claim.

Plaintiffs concede that they have not pled facts plausibly establishing an equal treatment claim under seven of the nine factors set forth in 34 C.F.R. § 106.21(c)(2)-(10). Their brief cites only two factors, (7) and (10). Plaintiffs are wrong on both.

Plaintiffs' argument that they have plausibly asserted an "equal treatment" claim under 34 C.F.R. § 106.41(c)(7) relating to the "provision of locker rooms, practice and competitive facilities" cannot be asserted against Penn, because Harvard (and not Penn) provided those facilities at the Ivy League Championships. Plaintiffs argue that there would be no "need to accommodate a man at a women's swimming championship if Penn had never rostered Thomas." Penn's conduct is far too divorced from such alleged harm to provide the requisite causal connection. *See Dantzler, Inc. v. Empresas Berríos Inventory & Ops., Inc.*, 958 F.3d 38, 48 (1st Cir. 2020) ("The Supreme Court has cautioned against courts finding that a plaintiff's injury is fairly traceable to a defendant's conduct where the plaintiff alleges a causal chain dependent on actions of third parties."). And even so, there are no allegations that Harvard denied Plaintiffs access to facilities of the same quality, size, and location as men, which is the focus of 106.41(c)(7). (*See* Dkt. 67 at p. 23.)

Indeed, none of the cases Plaintiffs cite support their assertion that allowing Thomas to use the locker room that corresponds with her gender identity violated Title IX. In *Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 494 (6th Cir. 2008), the Sixth Circuit found a privacy right violation under the Fourth Amendment where a school installed video surveillance equipment in locker rooms without student knowledge. In *U.S. v. Virginia*, 518 U.S. 515 (1996), the Supreme Court

---

[9] Plaintiffs cite to *Soule v. Conn. Ass'n of Schools*, 755 F. Supp. 3d 172 (D. Conn. 2024). (*See* Dkt. 83 at pp. 23, 24, 28, 30, 41, 46, 49, 50, 54.) While *Soule* recognized that equal opportunity under Title IX is evaluated on a program-wide level, the court then veered off and applied both a *McDonnell Douglas* burden-shifting and Americans with Disabilities Act ("ADA") accommodation standards. *Id.* at 184–201. Neither Plaintiffs nor any Defendant in this case advocate for a similar analysis because the *McDonnell Douglas* framework and ADA standards are inapplicable. *Soule* was wrongly decided, and the Court should afford it no weight.

7

ruled that a male-only admissions policy violated the Fourteenth Amendment's Equal Protection Clause in an opinion that does not mention locker rooms, showers, or anything of the like. In *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005), the Supreme Court held that Title IX provides a private right of action for retaliation for complaining of sex discrimination. Plaintiffs assert that the numerous cases cited by Defendants holding that separation of middle school and high school bathrooms by gender identity is lawful under Title IX are "entirely inapposite" in the competitive sports context because changing racing suits takes "20 minutes or more" (an unpled allegation). (Dkt. 83 p. 20.) They provide no authority for their opinion that adult collegiate athletes are somehow entitled to greater privacy rights than middle school and high school aged children.[10]

Next, Plaintiffs argue that 34 C.F.R. § 106.41(c)(10)—which lists "publicity" as a factor that should be considered—"provides that a Title IX denial of equal opportunity occurs when a man *appropriates* publicity that should go to women competing on a women's team and competing in a women's competition." (Dkt. 83 at p. 19) (emphasis added). While case law on the "publicity" prong is sparse, the Policy Interpretation and the DOE's 1990 Investigator's Manual make clear that a single athlete "appropriating publicity," which Plaintiffs argue happened here, cannot give rise to a Title IX violation. (*See* Dkt. 83 pp. 23-24, 30, 43-44.) The Policy Interpretation assesses compliance with the "publicity" prong by examining "the equivalence for men and women of: (1) availability and quality of sports information personnel; (2) access to other publicity resources for men's and women's programs; and (3) quantity and quality of publications and other promotional devices featuring men's and women's programs." *See* 44 Fed. Reg. 71,417. The factor is focused on team-based resources.

The DOE's 1990 Investigator's Manual is helpful in interpreting each of the three factors. *See* https://files.eric.ed.gov/fulltext/ED400763.pdf. The Investigator's Manual directs OCR investigators to focus on information relating to press guides, promotional services, and sports

---

[10] Plaintiffs also argue that "the unwelcome and hostile environment" created by allowing Thomas to compete and use the women's locker room "constitutes deliberate indifference to sex discrimination." (Dkt. 83 at p. 25.) The deliberate indifference standard was designed for plaintiffs alleging sexual harassment. *Doe v. Univ. of Mass. – Amherst*, 2015 U.S. Dist. LEXIS 91995, at *19–20 (D. Mass. July 14, 2015). A sexual harassment claim has not been plead here.

8

information personnel offered to men's and women's programs. *Id*. The manual further provides a series of questions investigators should ask in the course of their investigations, such as: "What is done to promote women's sports? What is done to promote men's sports?"; and "Does the sports information person assigned to the team travel to away games? Is this person present at all home games?" (*Id.*). The "publicity" factor has nothing to do with whether particular athletes at a school receive a disproportionate amount of publicity. *See Ollier v. Sweetwater Union High Sch. Dist.*, 2014 U.S. Dist. LEXIS 35259, at *22–23 (C.D. Cal. Mar. 17, 2014) (considering "occurrence[s] of assemblies, pep rallies or other events at which athletics teams are introduced or honored").

Finally, Plaintiffs attack Penn's reliance on the Policy Interpretation, suggesting that Penn is trying to "narrow Title IX claims" to only what is described in it. But that is not the case. Penn points to the Policy Interpretation to explain the type of resource-focused inquiries relevant to "equal treatment" claims. And even beyond that, Plaintiffs' assault on the Policy Interpretation is at odds with their Complaint, where Plaintiffs affirmatively invoke the Policy Interpretation. (*See, e.g.*, Dkt. 1 ¶¶ 94-98).[11] With Plaintiffs having invoked it, and the First Circuit having done so too (*see Cohen*), it is entirely appropriate for the Court to rely on the Policy Interpretation.

### E.     Penn Had a Strong Basis in Evidence To Believe That It Would Violate Title IX If It Excluded Thomas from the Ivy League Championships.

Plaintiffs try to minimize *Ricci*'s impact by reiterating what Penn already brought to the Court's attention—the Supreme Court considered the scenario applicable to the facts here in dicta. (Dkt. 83 at p. 55.) However, the First Circuit has concluded that lower federal courts "are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when . . . a dictum is of recent vintage and not enfeebled by any subsequent statement."

---

[11] It is only now when Penn showed how the Policy Interpretation defeated their claims (*see, e.g.*, Dkt. 67 at pp. 14-17), that Plaintiffs seek to sweep it under the rug with a *Loper Bright* broom. But Plaintiffs misread *Loper Bright*. *Loper Bright* overturned *Chevron* and was dramatic, but it did not overrule the decades of precedent recognizing the persuasive value of agency guidance in statutory construction. *Lopez v. Garland*, 116 F.4th 1032, 1036 (9th Cir. 2024) ("[W]e may look to agency interpretations for guidance, but do not defer to the agency [after *Loper-Bright*]."). Here, the First Circuit has already embraced the Policy Interpretation as a proper reflection of Title IX's reach. *See Cohen v. Brown Univ.*, 991 F.2d 888, 900 (1st Cir. 1993) ("We conclude that DED's [1979] Policy Interpretation means exactly what it says. This plain meaning is a proper, permissible rendition of the statute.").

9

*McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 19 (1st Cir. 1991). Plaintiffs have not set forth any arguments for why this Court should not adhere to—or at least view as persuasive—this dicta.

Plaintiffs also note that *Ricci* was decided on summary judgment. (Dkt. 83 at p. 55.) That is of no consequence because dismissal is appropriate where the facts establishing the affirmative defense are clear on the face of the plaintiff's pleadings. *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001). Penn's strong basis in evidence is apparent on the face of the Complaint.[12] Plaintiffs' suggestion that the Executive Orders and DOE enforcement in effect at the time should hold less weight because they do not use buzz words such as "athlete" and "sports" (*see* Dkt. 83 at pp. 51-52.) is belied by the documents. The June 2021 DOE Fact Sheet provided examples of incidents OCR could investigate, including: "[A] transgender high school girl . . . joins her friends to try out for the girls' cheerleading team and the coach turns her away from tryouts solely because she is transgender. When the student complains, the principal tells her 'those are the district's policies.'" *Id.*; *see also* Dkt. 67, Sturgeon Decl., at 9. Plaintiffs have tried to characterize this as an example of "stigmatization in everyday school settings not eligibility in competitive scholastic sport." (Dkt. 83 at pp. 51-52) (emphasis added). Plaintiffs' argument (at odds with competitive cheerleading) is also at odds with the Fact Sheet.

### III.   CONCLUSION

For all the reasons set forth herein and in Penn's moving papers, Penn respectfully requests that the Court grant Penn's motion and dismiss Plaintiffs' Complaint in its entirety with prejudice.

---

[12] It includes the NCAA Policy dating back to 2010 (with which Plaintiffs plead Penn was required to comply, *see* Dkt. 1 ¶¶ 73, 137-143), *Bostock*, legal authority pre- and post-*Bostock* (which Plaintiffs fail to distinguish in any meaningful way), and presidential Executive Orders and DOE enforcement guidance in effect during the 2021-2022 season. (*See* Dkt. 67 at pp. 17-20.)

| | |
|---|---|
| Dated: May 23, 2025 | Respectfully submitted,<br><br>PAUL HASTINGS LLP<br><br>By: _____<br>Jeffrey A. Sturgeon<br><br>Jeffrey A. Sturgeon (*pro hac vice*)<br>200 Park Avenue<br>New York, NY 10166<br>jeffreysturgeon@paulhastings.com<br>Telephone: 1(212) 318-6017<br>Paul C. Evans (*pro hac vice*)<br>200 Park Avenue<br>New York, NY 10166<br>paulevans@paulhastings.com<br>Telephone: 1(212) 318-6009<br><br>Remy D. Snead (*pro hac vice*)<br>71 S. Wacker Dr., Suite 4500<br>Chicago, IL 60606<br>remysnead@paulhastings.com<br>Telephone: 1(312) 499-6086<br><br>Matthias A. Kamber<br>101 California Street, 48th Floor<br>San Francisco, California 94111<br>matthiaskamber@paulhastings.com<br>Telephone:      1(415) 856-7000<br>Facsimile:       1(415) 856-7100<br><br>Attorneys for Defendant<br>TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA |

## CERTIFICATE OF SERVICE

    I hereby certify that a true and accurate copy of this document was filed through the Electronic Case Filing system and will be served upon the attorney of record for each party registered to receive electronic service on this 23rd day of May, 2025.

_____
Jeffrey A. Sturgeon