# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GRACE ESTABROOK, ELLEN HOLMQUIST, and MARGOT KACZOROWSKI, <br><br> Plaintiffs, <br><br> v. <br><br> THE IVY LEAGUE COUNCIL OF PRESIDENTS, PRESIDENT AND FELLOWS OF HARVARD COLLEGE, TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, and NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, <br><br> Defendants. | **Leave to file granted on September 24, 2025** <br><br> Civil Action No. 1:25-cv-10281-WGY <br><br> **REPLY IN SUPPORT OF** <br><br> 1. **MOTION TO RECONSIDER ORDERS DISMISSING IVY LEAGUE AND HARVARD** <br> 2. **ALTERNATIVE MOTION TO AMEND COMPLAINT TO ADD CONSPIRACY/AIDING AND ABETTING CLAIM(S), AND** <br> 3. **MOTION TO PERMANENTLY LIFT THE STAY** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

REPLY ARGUMENT .................................................................................................................. 5

I.   The Complaint Gives Sufficient Notice of Civil Conspiracy ............................................. 5

II.  The Complaint States a Title IX Claim Against the Ivy League ....................................... 5

III. The Complaint States a Title IX Claim Against Harvard .................................................. 6

IV.  Amending the Complaint to Add Civil Conspiracy and/or Aiding and Abetting Claims Will Not be Futile ................................................................................................................ 7

    A.   Plaintiffs Allege an "Underlying Tort" ................................................................... 7

    B.   Violation of a Federal Law that Provides a Private Right of Action is an "Underlying Tort" ..................................................................................................... 8

    C.   State Law Claims Are Not an End-Run Around Title IX ..................................... 10

    D.   Plaintiffs Adequately Alleged All Elements of the State Law Claims ................. 13

    E.   The Claims Are Not Time-Barred as to UPenn ..................................................... 13

    F.   The Court May Extend Capacity for Suit Under State Law to the Ivy League, Just Like it Did for the NCAA ................................................................................ 13

V.   Plaintiffs Did Not Need to Attach a Proposed Amended Complaint Because They Sufficiently Identified the Proposed Amendments ........................................................... 14

CONCLUSION ........................................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amoco Oil Co. v. Loc. 99, Int'l Bhd. of Elec. Workers, AFL-CIO*,
  536 F. Supp. 1203 (D.R.I. 1982) ............................................................................................ 7

*Bettencourt v. Town of Mendon*,
  334 F. Supp. 3d 468 (D. Mass 2018) ...................................................................................... 8

*Cannon v. University of Chicago*,
  441 U.S. 677 (1979) ................................................................................................................ 5

*Cohane v. Nat'l Collegiate Athletic Ass'n*,
  No. CIV.A. 14-10494-RGS, 2014 WL 1820782 (D. Mass. May 8, 2014) ............................ 10

*Davis v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629 (1999) ................................................................................................................ 7

*Doe v. University of South*,
  No. 4:09-cv-62, 2011 WL 1258104 (E.D. Tenn. Mar 31, 2011) ............................................. 5

*Gebser v. Lago Vista Indep. Sch. Dist.*,
  524 U.S. 274 (1998) ............................................................................................................ 5, 8

*Great Am. Fed. Sav. & Loan Ass'n v. Novotny*,
  442 U.S. 366 (1979) ................................................................................................................ 7

*Hagenah v. Berkshire Cnty. ARC, Inc.*, No. 3:16-CV-3,
  0141-KAR, 2018 WL 907407 (D. Mass. Feb. 15, 2018) ........................................................ 7

*In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*,
  No. MDL 13-02419-RWZ, 2014 WL 4322409 (D. Mass. Aug. 29, 2014) ............................. 5

*Insulet Corp. v. EOFlow Co.*,
  755 F. Supp. 3d 70 (D. Mass. 2024) ....................................................................................... 8

*Kurker v. Hill*,
  689 N.E.2d 833 (Mass Ct. App. 1998) .................................................................................... 4

*Kyte v. Philip Morris Inc.*,
  556 N.E.2d 1025 (Mass. 1990) ............................................................................................... 4

*Lorenc v. Be Free, Inc.*,
  136 F. Supp. 2d 1 (D. Mass. 2001) ......................................................................................... 4

*Monroe v. Medtronic, Inc.*,
    511 F. Supp. 3d 26 (D. Mass. 2021) ................................................................................. 10

*Nedder v. UMass Mem'l Health Care, Inc.*,
    772 F. Supp. 3d 87 (D. Mass. 2025) ................................................................................... 7

*Northbrook Excess & Surplus Ins. Co. v. Med. Malpractice Joint Underwriting Ass'n of Massachusetts*,
    900 F.2d 476 (1st Cir. 1990) ............................................................................................ 10

*Oldham v. Penn. State Univ.*,
    No. 4:20-CV-02364, 2022 WL 1528305 (M.D. Pa. May 13, 2022) ................................... 6

*Petruska v. Gannon Univ.*,
    No. CIV. A. 1:04-CV-80, 2008 WL 2789260 n.9 (W.D. Pa. Mar. 31, 2008) ..................... 6

*PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*,
    387 S.W.3d 525 (Tenn. Ct. App. 2012) .............................................................................. 5

*Rice v. New England Coll.*,
    676 F.2d 9 (1st Cir. 1982) ................................................................................................... 7

*Ross v. Univ. of Tulsa*,
    No. 14-CV-484-TCK-PJC, 2015 WL 4064754 (N.D. Okla. July 2, 2015) ......................... 5

*Santos v. U.S. Bank Nat. Ass'n*,
    54 N.E.3d 548 (Mass. Ct. App. 2016) ................................................................................. 5

*Taylor v. Am. Chemistry Council*,
    576 F.3d 16 (1st Cir. 2009) ............................................................................................. 3, 8

*Williams v. Bd. of Regents of Univ. Sys. of Georgia*,
    477 F.3d 1282 (11th Cir. 2007) .......................................................................................... 6

*Zhornitsky v. Yale Sch. of Med.*,
    No. 3:24-CV-00018 (KAD), 2024 WL 4880695 (D. Conn. Nov. 25, 2024) ....................... 6

**Statutes**

20 U.S.C. § 1687(4) ..................................................................................................................... 2

42 U.S.C. § 1985(3) ..................................................................................................................... 7

**Rules**

Federal Rule of Civil Procedure 17(b)(3) .................................................................................... 1

Federal Rule of Civil Procedure 17(b)(3)(A) .............................................................................. 2

**Other Authorities**

Restatement (Second) of Torts § 876 ........................................................................................ 4, 5

**REPLY ARGUMENT**

**I.     The Complaint Gives Sufficient Notice of Civil Conspiracy**

Every Defendants' response brief fails to contend with the simple facts alleged in the Complaint, which the Court recognized described a conspiracy or aiding and abetting theory of liability. ECF No. 103 at 4. The Court should grant the Motion for Reconsideration and confirm that Plaintiffs alleged state claims for civil conspiracy and/or aiding and abetting and that these claims remain pending against all the Defendants, notwithstanding the Court's Title IX rulings. This is not an attempt to raise an issue for the first time on reconsideration, as Defendants argue, *e.g.*, ECF No. 111 at 10–12, but a request that the Court reconsider the scope and extent of its complete dismissal of Harvard and the Ivy League from this lawsuit.

The Defendants argue that the Complaint fails to provide adequate notice of Plaintiffs' state law claims. These arguments ignore the fact the Court had enough notice to recognize that the facts alleged in the Complaint described concerted action and mutual assistance among the Defendants to ensure that Lia Thomas competed in the 2022 Ivy League Championships. *See* ECF No. 103 at 4. That's a conspiracy and aiding and abetting. Plaintiffs also acknowledge that the Complaint omits a heading designating a "count" for its state law claims. But these objections are a throwback to form pleading standards. No federal rule requires plaintiffs to identify their legal theories through headings. ECF No. 108 at 14–15.

**II.    The Complaint States a Title IX Claim Against the Ivy League**

State claims aside, the Court should reconsider its dismissal of the Ivy League, and give full weight to all of Plaintiffs' Title IX arguments against the Ivy League's Motion to Dismiss *E.g.*, ECF No. 83 at 32–38, because its conclusion that the Plaintiffs should have sued all Ivy League members, rather than the Ivy League itself, is based on a misunderstanding of the Ivy League's corporate status and its capacity for suit under Federal Rule of Civil Procedure 17(b)(3).

5

The Court and the Ivy League itself misunderstand that the Ivy League's unique nature as an unincorporated association means that it falls squarely within the plain meaning of a Title IX "program or activity" under the Civil Rights Restoration Act ("CRRA"), 20 U.S.C. § 1687(4), because the sum of its corporate "parts" are its individual member institutions, who are federal funding recipients. But rather than address the plain meaning of the CRRA, the Court concluded that Plaintiffs should have sued all Ivy League members, not the Ivy League. See ECF No. 109 at 12–13.

The Ivy League argues in response that Plaintiffs misconstrue the reason for the Court's dismissal of the Ivy League. It argues instead that "[t]hose reasons were that The Ivy League does not receive federal funding and thus is not subject to the requirements of Title IX." ECF No. 112 at 6. The Ivy League argues that Plaintiffs are "conflat[ing] The Ivy League with its members" by imputing federal receipts of its members onto the Ivy League. *Id.* at 7. But that's the whole point of the CRRA. Plaintiffs did not misunderstand the Ivy League's argument.

The Ivy League cannot escape the legal implications of its corporate structure. Under the CRRA, it does not matter that the Ivy League does not receive federal funding directly so long as its "parts" receive federal funding. As an unincorporated association, the Ivy League's "parts" are its member institutions. And under Federal Rule 17(b)(3)(A), Plaintiffs could sue the Ivy League in its common name as an unincorporated association to bring its Title IX claims. It did not need to sue every member institution to hold the Ivy League accountable.

### III. The Complaint States a Title IX Claim Against Harvard

The Court should reconsider its dismissal of the Title IX claims against Harvard as well. The Court misunderstood the Plaintiffs' essential argument that Title IX *requires* maintaining sex-separation when schools and conferences opt for sex-separation as the means for ensuring equal opportunity. Once schools, including the schools that host collegiate events, separate sports teams

6

by sex to comply with Title IX, they cannot renege on a case-by-case basis without fundamentally compromising their compliance with Title IX. The Court did not grapple with this argument.

Harvard also says it cannot be liable for the actions of others under Title IX, saying that it did not "determine[] who was eligible for the Championships." ECF No. 111 at 13–14. But no one can dispute that Harvard, and Harvard alone, decided to host a sex-separated *women's* Championship, not a men's event, at a pool that it alone controls. Harvard's Title IX liability turns on this act of choosing to host a women's event but then deliberately allowing a man to use its facilities and locker rooms and steal the limelight that it said would be for women. This destroyed Plaintiffs' enjoyment of full, unfettered, and undisrupted access to those opportunities. This states a Title IX violation. ECF No. 108 at 17–20 (citing cases).

### IV.  Amending the Complaint to Add Civil Conspiracy and/or Aiding and Abetting Claims Will Not be Futile

If the Court finds any defect in Plaintiffs' arguments on reconsideration, it should nonetheless grant its Motion for Leave to Amend. Doing so will not be futile.

#### A.  Plaintiffs Allege an "Underlying Tort"

The "underlying tort" is the Title IX violation alleged in the Complaint. Civil conspiracy does not require that *every* co-conspirator actually commit the underlying tort, only that one of them did and the others engaged in either concerted action in furtherance of that tort or intentionally assisted or encouraged the commission of the tort. *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 34–35 (1st Cir. 2009). "The conspiracy consists in agreeing to, or assisting in, this underlying tort," not that each Defendant independently and successfully completed the violation all by itself. *Id.*

The Complaint explains how each Defendant independently violated Title IX, and Plaintiffs contend that each did, in fact, violate Title IX. But even if any of the federal Title IX

7

claims fail as to any of the Defendants (for whatever reason), the Complaint sufficiently alleges that each Defendant engaged in concerted action with and provided substantial assistance to the others. If any one of the Defendants violated Title IX[1] (thereby satisfying the underlying tort requirement), then each of the Defendants engaged in civil conspiracy or aiding and abetting by virtue of their concerted action and/or assistance. The Court has not decided whether the Title IX claims against UPenn or the NCAA should be dismissed. With those Title IX violations still pending (and the Title IX violations against the Ivy Leage and Harvard under reconsideration), the underling tort requirement is satisfied for all co-conspirators.

> **B.    Violation of a Federal Law that Provides a Private Right of Action is an "Underlying Tort"**

Defendants argue that granting Plaintiffs' Motions would require this Court to expand Massachusetts law because no Massachusetts case expressly says that a violation of a federal statute that provides for a private right of action is an "underlying tort."  Plaintiffs acknowledge the dearth of Massachusetts case law on this issue. But this Court is in a good position to accurately predict[2] that Massachusetts would apply such a rule if asked.

The Massachusetts appellate courts generally apply the Restatement (Second) of Torts § 876 formulation of civil conspiracy. *Kyte v. Philip Morris Inc.*, 556 N.E.2d 1025, 1027 (Mass. 1990) (citing cases); *accord Kurker v. Hill*, 689 N.E.2d 833, 836–37 (Mass Ct. App. 1998).

---

[1] The University of Pennsylvania has publicly apologized "to those who experienced a competitive disadvantage or experienced anxiety" because it rostered Thomas and brought him to the Ivy League Championships, following the NCAA's transgender eligibility policies. *Penn's Title IX Resolution with the U.S. Department of Education Office of Civil Rights*  https://penntoday.upenn.edu/announcements/penns-title-ix-resolution-us-department-education-office-civil-rights (last accessed September 23, 2025).
[2] *Lorenc v. Be Free, Inc.*, 136 F. Supp. 2d 1, 4 (D. Mass. 2001) ("Where Massachusetts state precedent is ambiguous, absent or incomplete, this Court can predict how the Massachusetts Supreme Judicial Court would decide if presented with the question."). Harvard argues that the "complexity" of the state law question is a reason for the court to decline supplemental jurisdiction over this claim. ECF No. 111 at 21 n.3. The Court should reject this invitation because recognizing that violation of a federal statute that provides a private right of action is an "underlying tort" for civil conspiracy is not complex or controversial.

8

Tennessee does as well.[3] This Court has recognized that actionable statutory violations might serve as an underlying tort for conspiracy under Tennessee law. *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, No. MDL 13-02419-RWZ, 2014 WL 4322409, at *21 (D. Mass. Aug. 29, 2014). Predicting that the Massachusetts Supreme Court would take a similar approach to this Court in *New England Compounding Pharmacy* is reasonable, particularly in this case, which implicates Massachusetts' strong public policy of prohibiting sex discrimination. Massachusetts Declaration of Rights, Article I.

Harvard argues that Title IX does not sound in tort even if it is actionable because "it is at bottom a federal funding condition and so does not operate like any traditional tort." ECF No. 111 at 18. This simply ignores *Cannon v. University of Chicago*, 441 U.S. 677 (1979), and its progeny that recognize an unqualified private right of action for Title IX liability. Like any other Massachusetts tort, Plaintiffs who bring Title IX claims must prove a duty (that Title IX applies and prohibits conduct), breach, causation, and loss[4] that resulted from the breach. *Santos v. U.S. Bank Nat. Ass'n*, 54 N.E.3d 548, 558 (Mass. Ct. App. 2016).[5] Regardless of the constitutional

---

[3] *E.g.*, *PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 552 (Tenn. Ct. App. 2012) (citing and relying upon Restatement (Second) of Torts § 876).

[4] The fact that Title IX permits only nominal damages does not mean that Title IX does not provide an actual damages remedy. *Gebser* makes clear that Title IX's private right of action includes an "implied damages remedy" and that upon a showing of actual notice and deliberate indifference, that remedy applies to a Defendant who violates Title IX. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292–93 (1998) ("we will not hold a school district liable in damages under Title IX for a teacher's sexual harassment of a student absent actual notice and deliberate indifference").

[5] Plaintiffs do not allege state law negligence or negligence *per se* claims. Harvard's points to two negligence *per se* cases to argue that "Courts have repeatedly rejected … attempts to use state common-law theories to end-run Title IX's limitations" or "expand Title IX liability beyond its intended scope." Dkt. 111 at 20–21 (citing *Doe v. University of South*, No. 4:09-cv-62, 2011 WL 1258104 (E.D. Tenn. Mar 31, 2011), and *Ross v. Univ. of Tulsa*, No. 14-CV-484-TCK-PJC, 2015 WL 4064754, at *4 (N.D. Okla. July 2, 2015)). But those cases held that a violation of Title IX or its regulations could not serve as the "standard of care" in a state negligence action. They did not hold that Title IX could not be the "underlying tort" of a civil conspiracy. Moreover, those cases dismissed the negligence claims at issue primarily because the Plaintiffs' understated the intent requirements of Title IX. *Ross*, 2015 WL 4064754 at *4 (noting *Gebser*'s deliberate indifference standard is higher than negligence); *Doe*, 2011 WL 1258104 at *14 (same). But Plaintiffs have alleged that all Defendants acted intentionally, as they must to establish an aiding and abetting claim. Plaintiffs state law claims incorporate the heightened intent requirements of Title IX in a way negligence claims do not.

9

basis for Congress's power to guarantee equal opportunity in women's athletics (*i.e.*, the Spending Clause), the Title IX private right of action itself sounds in tort.

### C.  State Law Claims Are Not an End-Run Around Title IX

Plaintiffs' civil conspiracy and aiding and abetting claims are not Title IX conspiracy claims, as Defendants argue. They are state law claims. Most of the cases cited in Defendants' briefs miss this fundamental point, citing many cases that limit Title IX but say nothing about state law civil conspiracy or aiding and abetting claims. Plaintiffs' claims do nothing to undermine Title IX because, as discussed above, Plaintiffs agree that they must allege an underlying Title IX violation, which they do.

The Defendants cite several cases holding that a conspiracy to violate Title IX is not a Title IX violation. *Oldham v. Penn. State Univ.*, No. 4:20-CV-02364, 2022 WL 1528305, at *17 (M.D. Pa. May 13, 2022), *aff'd in part, vacated in part, remanded*, 138 F.4th 731 (3d Cir. 2025) (holding that conspiracy among individuals to violate Title IX did not state a Title IX violation); *Zhornitsky v. Yale Sch. of Med.*, No. 3:24-CV-00018 (KAD), 2024 WL 4880695, at *6 (D. Conn. Nov. 25, 2024) (holding that Plaintiffs failed to state a claim "under Title IX" against a non-educational entity merely because of allegations that the entity was an "accessory" to Yale).

Defendants also cite several cases holding that a conspiracy to violate Title IX is not a viable claim under Section 1983. *Petruska v. Gannon Univ.*, No. CIV. A. 1:04-CV-80, 2008 WL 2789260, at *8 n.9 (W.D. Pa. Mar. 31, 2008) (noting plaintiff "denies that her civil conspiracy claim is in the nature of a" state law claim and holding that conspiracy to violate Title IX did not state a Section 1983 claim); *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1300 (11th Cir. 2007) (holding that plaintiff cannot "use § 1983 to assert a Title IX claim against an individual school official").

10

Defendants also cite several cases rejecting efforts by plaintiffs to assert violations of 42 U.S.C. § 1985(3)[6] based on a conspiracy to violate Title VII, *Rice v. New England Coll.*, 676 F.2d 9, 11 (1st Cir. 1982) (affirming dismissal of Section 1985(3) claim); *Hagenah v. Berkshire Cnty. ARC, Inc.*, No. 3:16-CV-30141-KAR, 2018 WL 907407, at *6 (D. Mass. Feb. 15, 2018) (dismissing Section 1985(3) claim); *Amoco Oil Co. v. Loc. 99, Int'l Bhd. of Elec. Workers, AFL-CIO*, 536 F. Supp. 1203, 1215 (D.R.I. 1982) (same), and rejecting efforts to bring individual liability aiding and abetting claims under Title VII. *Nedder v. UMass Mem'l Health Care, Inc.*, 772 F. Supp. 3d 87, 99 (D. Mass. 2025).

None of these cases apply here because Plaintiffs do not attempt to allege a *federal* claim for a conspiracy to violate Title IX. Defendants have not cited a single case rejecting *a state law claim* for conspiring to violate Title IX or aiding and abetting a violation of Title IX. Plaintiffs allege a state law claim for civil conspiracy and/or aiding and abetting, with the Title IX violation as the underlying tort. Alleging a viable state law claim is not an "end-run" around Title IX.[7]

The Defendants argue that allowing claims for conspiracy to violate Title IX would violate the rule that "'a recipient of federal funds may be liable in damages under Title IX only for its own misconduct,'" ECF No. 113 at 12 (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640 (1999)), and that Plaintiffs cannot hold them liable for each others' actions. They say that

---

[6] 42 U.S.C.§ 1985(3) provides a cause of action against those who "conspire … for the purpose of depriving … any person or class of persons the equal protection of the laws, or of equal privileges and immunities under the law."
[7] Moreover, comparing Plaintiffs' state law claims to Section 1985(3) conspiracy claims premised on Title VII violations is inapposite because Title VII's comprehensive administrative enforcement scheme is fundamentally different than Title XI's. When the Supreme Court rejected Title VII violations as a predicate for Section 1985(3) conspiracy claims, it noted that Title VII was a "comprehensive plan" with a detailed administrative process that requires filing charges with the Equal Employment Opportunity Commission, "prevents immediate filing of judicial proceedings to encourage voluntary conciliation," and "short and precise time limitations." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 373–75 (1979). A Section 1985(3) conspiracy claim for a violation of Title VII "could completely bypass the administrative process." *Id.* at 376. Title XI has no mandatory administrative process to exhaust much less bypass. Defendants say that the principle that "a funding recipient can only be liable for its own conduct that amounts to a Title IX violation" is the "Title IX liability framework" that a civil conspiracy claim would undermine. Dkt. 113 at 13. But this principle is nothing akin to the comprehensive, administrative process of Title VII.

11

conspiracy is "'a form of vicarious liability for the tortious conduct of others,'" and that this is fundamentally incompatible with Title IX. *E.g.*, ECF No. 113 at 12 n.3 (quoting *Bettencourt v. Town of Mendon*, 334 F. Supp. 3d 468, 487 (D. Mass 2018)).

But vicarious liability *is possible* under Title IX. Defendants ignore longstanding Supreme Court precedent that vicarious liability for Title IX applies when schools have actual notice of the violations and are deliberately indifferent to such notice. *Gebser*, 524 U.S. at 292–93.[8] This standard protects Title IX defendants from liability when they are unaware of the wrongdoing of third-parties, as Supreme Court in *Gebser* and *Davis* recognized. But it does not mean that Plaintiffs can never allege some form of vicarious Title IX liability.

Here, Plaintiffs have alleged that Defendants intentionally violated Title IX by deliberately playing their respective roles in ensuring that Thomas participated in the Ivy League championships. If any one of them committed this underlying tort (which they did, see ECF No. 108 at 17–25), then Plaintiffs state a claim for civil conspiracy and/or aiding and abetting by alleging concerted action or intentional assistance of the other three defendants in furthering that tortious act. Plaintiffs' allegations satisfy both the actual notice and deliberate indifference of Title IX and civil conspiracy and/or aiding and abetting when they allege that each Defendant "acted in concert and in furtherance of" a Title IX violation (for civil conspiracy), *Insulet Corp. v. EOFlow Co.*, 755 F. Supp. 3d 70, 97 (D. Mass. 2024) (cleaned up), or with knowledge and intent that assistance is contributing to a Title IX violation (for aiding and abetting). *Taylor*, 576 F.3d at 35. There is no tension between state and federal law here.

---

[8] *Gebser*'s limitation on vicarious liability did not apply to Title IX violations that "involve official policy of the recipient entity." *Gebser*, 524 U.S. at 290. All Defendants maintained and followed official policies that expressly permitted trans-identifying men to participate and compete on women's athletic teams.

### D. Plaintiffs Adequately Alleged All Elements of the State Law Claims

Harvard argues that Plaintiffs have not satisfied all the elements of civil conspiracy or aiding and abetting. But their argument re-writes the Complaint. Plaintiffs quoted paragraphs from the Complaint that outline the conspiracy, ECF No. 108 at 13–14 (quoting Compl. ¶¶ 344–47, 384, 387, 393, 400), and alleged that "Harvard necessarily participated in the pressure campaign against the NCAA to delay enforcement of its 2022 TEP by virtue of the President of Harvard's membership on the Ivy League Council of Presidents." *Id.* (citing Compl. ¶¶ 7–19, 314, 322–24, 330–37, 342, 344 and ECF No. 83 at 45). These allegations satisfy the elements for all the reasons stated in the opening brief.

### E. The Claims Are Not Time-Barred as to UPenn

The state law claims are not time barred. They have the same three-year statute of limitations as the Title IX claims, and that time had not run before the Complaint was filed for all the reasons stated in Plaintiffs prior briefing. ECF No. 83 at 55–60. UPenn rehashes its statute of limitations arguments in response by making the same mistake it made in support of its motion to dismiss: it ignores the date of injury actually alleged in the Complaint. Defendants injured Plaintiffs at the Ivy League Championships. ECF No. 113 at 10–13. The conspiracy to ensure Thomas participated in these championships was not known to Defendants until the days before the Championships began on February 16, 2022, at the earliest. Several of Defendants acted in furtherance of the conspiracy occurred after February 4, 2022, Compl. ¶¶ 331–347, and those acts were also within the statute of limitations.

### F. The Court May Extend Capacity for Suit Under State Law to the Ivy League, Just Like it Did for the NCAA

The Ivy League accurately argues, as Plaintiffs already said in their opening brief, that unincorporated associations *generally* cannot be sued for Massachusetts state law claims under

13

their common name. ECF No. 112 at 9–10. But the Ivy League ignores that the First Circuit and this Court have applied *Diluzio* to other unincorporated associations beyond labor unions, like the NCAA, so that they can be sued for state law claims in their common name. *Northbrook Excess & Surplus Ins. Co. v. Med. Malpractice Joint Underwriting Ass'n of Massachusetts*, 900 F.2d 476, 480 (1st Cir. 1990); *Cohane v. Nat'l Collegiate Athletic Ass'n*, No. CIV.A. 14-10494-RGS, 2014 WL 1820782, at *1–3 (D. Mass. May 8, 2014) (holding that the NCAA may be sued for state law claims in its common name based on the rationale in *Diluzio*). There is no principled basis why the NCAA can be sued for state law claims in this Court but not the Ivy League.

## V. Plaintiffs Did Not Need to Attach a Proposed Amended Complaint Because They Sufficiently Identified the Proposed Amendments

Finally, Defendants fault the Plaintiffs for not attaching a proposed amended complaint to their Motion for Leave to File an Amended Complaint. *E.g.*, ECF No. 112 at 9 n.2. But they did not do so because the Court should grant the Motion for Reconsideration, mooting the need for an amended complaint to add a civil conspiracy and/or aiding and abetting claims.

If amendment is needed to assert those state claims, Plaintiffs have plainly "articulate[d] the basis for amendment," which is sufficient. *Monroe v. Medtronic, Inc.*, 511 F. Supp. 3d 26, 40 (D. Mass. 2021). The Amended Complaint will not assert any additional factual allegations. It will be identical to the original Complaint except that it will expressly identify the claims for civil conspiracy and aiding and abetting under Massachusetts law as Counts III and IV and alleging that Plaintiffs satisfied each element of each claim, as summarized in Plaintiffs' opening brief. ECF No. 108 at 16 (stating "[n]o additional factual allegations are necessary to assert these causes of action" and that the amended pleading will "expressly allege their civil conspiracy claim").

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider its dismissal of the Ivy League and Harvard from this lawsuit and stay of the case pending a decision on the motions to dismiss filed in the *Gaines* case. In the alternative, Plaintiffs respectfully request that the Court grant their Motion for Leave to Amend the Complaint to add state law civil conspiracy and aiding and abetting claims against all Defendants. If either motion is granted, the Court should permanently lift the stay of this case. Plaintiffs further seek all other just and appropriate relief.

Dated: September 24, 2025

Respectfully submitted,

/s/ *William Bock III*
William Bock III, Atty. No. 14777-49108[9]
Justin R. Olson, Atty. No. 31450-59[10]
Kroger Gardis & Regas, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Tel: (317) 692-9000
Fax: (317) 264-6832
E-mail: wbock@kgrlaw.com
E-mail: jolson@kgrlaw.com

/s/ *Samuel J. Whiting*
Samuel J. Whiting (BBO# 711930)
Massachusetts Liberty Legal Center
401 Edgewater Pl., Suite 580
Wakefield, MA 01880
Tel: (774) 462-7043
Email: sam@malibertylegal.org

*Attorneys for Plaintiffs*

---

[9] *Pro Hac Vice*
[10] *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of this document was filed through the Electronic Case Filing system and will be served upon the attorney of record for each party registered to receive electronic service this 24th day of September, 2025.

*/s/ William Bock III*
William Bock III
